**STATE of Minnesota, Respondent,**

v.

**Ricky A. OSBORNE, Appellant.**

**No. A05–988.**

Supreme Court of Minnesota.

June 7, 2007.

James R. Peterson, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Lori Swanson, Minnesota Attorney General, St. Paul, MN, Raymond F. Schmitz, Olmsted County Attorney, David F. McLeod, Assistant Olmstead County Attorney, Rochester, MN, for Respondent.

## OPINION

ANDERSON, G. Barry, Justice.

Appellant Ricky A. Osborne asserts that the district court abused its discretion when it revoked his probation. The court based its revocation decision on Osborne's daily marijuana use, juvenile record, and failure to contact probation authorities. The court of appeals affirmed. We affirm.

In 2001, the Rochester Police Department conducted numerous controlled buys of crack cocaine from Osborne. Two individuals also reported that Osborne and an accomplice robbed them of $700 at gunpoint. Osborne, then 18 years old, was certified as an adult and charged with racketeering, conspiracy to commit a controlled substance crime in the first degree, controlled substance crime in the third degree, two counts of aggravated robbery in the first degree, and violation of Minn. Stat. § 624.713 (2000) (forbidding certain persons from possessing pistols or semiautomatic military-style assault weapons).

Osborne admitted to selling crack cocaine and to conspiring with others to sell cocaine. He also admitted to the robbery. He pleaded guilty to the two controlled substance offenses and to an amended charge of second-degree assault.

Pursuant to the plea agreement, the district court sentenced Osborne to concurrent 27– and 36–month sentences on, respectively, the third-degree controlled substance and assault charges, and stayed the presumptive 122–month sentence on the conspiracy charge, placing Osborne on 30 years of probation. The remaining charges were dismissed. The parties crafted this somewhat unusual sentence, which the district court accepted, because Osborne was a juvenile when the crimes were committed and because Osborne's father was a driving force behind Osborne's involvement in the crimes. In addition to standard behavior and reporting requirements, Osborne's probation included abstinence from controlled substances and testing for drug and alcohol use.

After Osborne served roughly 12 months of his sentence, he was placed on supervised release on December 1, 2003. While in prison, he completed a program that included chemical dependency treatment. Osborne's supervised release was revoked on February 17, 2004, for failure to keep his supervised release agent informed of his residence and failure to abstain from

mood-altering chemicals. He returned to prison for 150 days.

At a subsequent probation violation hearing on March 4, 2004, Osborne's supervising agent testified that Osborne had changed his residence without informing her, that his efforts to find employment were minimal, and that he had tested positive for drug use. The agent also testified that she was unaware that Osborne was on both probation and supervised release, and that therefore no probation agreement was ever completed. The district court aborted the revocation proceeding, holding that because no probation contract was signed, there could not be clear and convincing evidence of a violation. Osborne's 122–month sentence thus remained stayed.

On July 8, 2004, Osborne completed the 150–day sentence and was again placed on supervised release. The Department of Corrections granted his request to move to Illinois, and his probation officer transferred his probation file to the probation department in Cook County. On January 4, 2005, Illinois rejected Osborne's probation because he refused to report to the Cook County Probation Department. Osborne claims that he attempted on numerous occasions to contact Illinois probation authorities, but his phone calls were never returned. The Illinois authorities claim that Osborne failed to return phone messages and attend a home visit and that Osborne never attempted to contact the Cook County Probation Department. After learning that Illinois had rejected supervision of Osborne, Osborne's probation officer in Minnesota ordered Osborne to return to Minnesota, which he did on January 13, 2005.

On February 3, 2005, at a district court hearing, Osborne admitted that during his supervised release he used marijuana on a daily basis and that he knew at the time that this violated his probation.[1] Osborne asked to remain on probation because he had refrained from committing new offenses for the longest period of his life (July 2004 through January 2005), he had been through a treatment program in prison and realized drugs were ruining his life, and he was ready to participate in an inpatient treatment program and address his chemical dependency problem. Osborne conceded that he had prior opportunities to benefit from chemical dependency services and took responsibility for his continued use, but asserted that he was now ready to begin treatment. The district court continued the hearing to allow Osborne and the state to investigate why Osborne never made contact with Illinois probation authorities.

The district court resumed the hearing on February 17, 2005. Osborne offered no further explanation of what happened in Illinois. Following arguments, and after continuing the hearing to review the certification report from the juvenile file, the district court revoked the stay of execution. The court found that Osborne violated probation by continuing to use chemicals and failing to cooperate with the transfer to Illinois, and that these violations were intentional. The court recognized that the marijuana use by itself appeared minor, but found that Osborne posed a high risk to reoffend in light of his extensive juvenile history and the services already provided.

Osborne appealed the revocation, arguing that he should have received probation services, including a program that addressed chemical dependency, before his probation was revoked. The court of appeals affirmed in an order opinion, holding

---

1. The district court judge who had sentenced Osborne had retired by the time of the February 2005 hearing, and the matter was heard by a different district court judge.

that Osborne failed to establish that the district court abused its discretion. Osborne appealed to this court, and we granted his petition for review.

I.

■■■ A district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Modtland,* 695 N.W.2d 602, 605 (Minn.2005) (quotation marks omitted). The decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *State v. Austin,* 295 N.W.2d 246, 251 (Minn.1980) (quotation marks omitted). "The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* at 250. Before revoking a probationary sentence, a district court must: (1) specifically identify the condition or conditions violated; (2) find that the violation was intentional or inexcusable; and (3) find that the policies favoring probation no longer outweigh the need for confinement. *Id.*

■■■ The district court made the required *Austin* findings at the revocation hearing and in the subsequent order. Osborne does not deny that he used marijuana daily or contend that this use was not intentional, but argues that the court erred in finding, on the third *Austin* factor, that the need for confinement outweighed the policies favoring probation. Osborne argues that the district court abused its discretion by considering Osborne's juvenile record as part of the revocation proceeding; by revoking probation for the minor violation of marijuana use; by allowing a judge other than the sentencing judge to

preside over his revocation hearing; by not providing any probationary services to Osborne since his release from prison; and by finding that Osborne posed a high risk to reoffend.

First, Osborne asserts that it was improper to use information in his juvenile record at the revocation hearing. He relies on the 1970 American Bar Association Standards for Criminal Justice statement, quoted in *Austin,* that "[r]evocation followed by imprisonment should not be the disposition * * * unless the court finds on the basis of the *original offense and the intervening conduct of the offender* that" confinement is necessary to protect the public, provide correction, or avoid unduly depreciating the seriousness of the offense. 295 N.W.2d at 251 (emphasis added) (citing ABA Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)). In the years since *Austin,* the ABA has amended the standards and removed this statement. *See* ABA Standards for Criminal Justice: Sentencing 18–7.3 cmt. (3d ed.1994). In 2005, however, this court repeated *Austin's* direction to follow the 1970 draft in *Modtland.* 695 N.W.2d at 607.

Despite the 1970 ABA Standards' direction to consider only the offense and intervening conduct, determining the threat to the public and the need for confinement will, on occasion, require analysis of a defendant's juvenile record. That is the case here, because Osborne was 17 when he committed the offenses at issue and 21 when the district court revoked his probation. The juvenile record was the only tool the court had to assess his threat to the public and risk to re-offend.

Osborne also argues that use of his juvenile record at the revocation hearing was inappropriate because that record was already factored into his original sentence. He cites no authority for the proposition that a juvenile record cannot be reviewed

for both sentencing and revocation purposes, and we have found none. A young adult felon's juvenile record must be considered as an element of his criminal history index. Minn. Sent. Guidelines II.B. As a practical matter, the juvenile record must also be considered when the district court evaluates the need to confine a young probation violator.[2] The two uses need not be exclusive.

We do not suggest that it is always appropriate to use a probationer's juvenile criminal record as a basis for revocation. At some point, a probationer must be judged on the basis of his adult conduct, free from the juvenile record. Here we note that Osborne's certification study was completed in October 2001, and the district court revoked probation in February 2005. We also note that the court revoked probation for drug use and failure to cooperate with probation, violations which fit the very pattern of criminal conduct found in the juvenile record and for which Osborne was incarcerated. In light of the relatively short time frame and the similarity of the offenses involved, we cannot conclude that the district court abused its discretion.

## II.

■ Osborne argues that his personal use of marijuana is a technical violation that does not justify revoking his probation. The district court acknowledged that the violation was minor, but made its decision based on the severity of Osborne's offenses and his prior criminal history.

The Minnesota Sentencing Guidelines counsel that:

2. We have mentioned that it would be unfair "to permit juvenile records to be used as though they were criminal records, being public information and following and harassing the juvenile throughout his life." *In re C.D.L.*, 306 N.W.2d 819, 821 (Minn.1981)

Great restraint should be exercised in imprisoning those violating conditions of a stayed sentence who were convicted originally of low severity offenses or who have short prior criminal histories. * * * Less judicial forbearance is urged for persons violating conditions of a stayed sentence who were convicted of a more severe offense or who had a longer criminal history. Even in these cases, however, imprisonment upon a technical violation of the conditions of a stayed sentence should not be reflexive.

Minn. Sent. Guidelines III.B.

Osborne was entitled to "less judicial forbearance." Conspiracy to commit a controlled substance crime in the first degree is a severity-level IX offense, carrying a minimum presumptive 74–month imprisonment. Minn. Sent. Guidelines IV; *see* Minn. Sent. Guidelines II.G (stating that the presumptive sentence for Conspiracy to Commit a Controlled Substance offense is that for the completed offense). The offense can be properly characterized as "severe." Osborne also had a lengthy criminal history for a 21 year-old.

In addition to Osborne's marijuana use, severe offense, and criminal history, the district court based its revocation decision on Osborne's failure to cooperate with the transfer of his probation to Illinois. While Osborne asserted that he made numerous attempts to contact probation authorities, the district court found his testimony not credible and the record supports that finding.

The district court's decision to revoke Osborne's probation, moreover, was not "reflexive," as *Austin* and the Sentencing

(holding it proper, in a juvenile proceeding, to impeach a witness with his juvenile record). This concern can be allayed in a revocation proceeding, as it was here, by keeping the juvenile records confidential.

Guidelines prohibit. The court gave Osborne two weeks after admitting the violations to contact Cook County authorities and provide an explanation of why he could not reach them. This explanation was never provided. The court then continued the hearing again in order to review the record. The court took pains to consider all relevant facts and details and issued a thorough explanation of its decision.

## III.

■ Osborne asserts that it is important to keep in mind that the judge who was conducting the revocation hearing was not the sentencing judge, and that this fact is "especially noteworthy given the unusual nature of the sentence and the thoughts and expectations that went into fashioning that sentence." Osborne cites no authority, and we have found none, for a right to have the sentencing judge preside over his probation revocation hearing. Judges are unavailable for a variety of reasons, including retirement, as was the case here. We decline to adopt a requirement that only a sentencing judge may hear subsequent probation violations.

## IV.

■ Osborne asserts that he was never extended the probationary resources contemplated in his sentence and argues that he cannot be expected to gain insight into his criminal behavior without the probationary resources promised but never provided by the state. It is undisputed that, since his first supervised release in December 2003, Osborne has received no probation services. But prior to December 2003, Osborne participated in several treatment programs, including the New Dimensions Alcohol and Other Drug Treatment Program (while in prison), the Substance Abuse Counseling Program and the Substance Abuse Aftercare Program at Elmore Academy, the 90/120–day consequence program at Many Rivers Juvenile Detention Center, the 30/60–day consequence program at Many Rivers, and the Many Rivers START program. Osborne's access to community resources was significant enough to prompt a psychologist to remark in a certification study that "[n]o dispositional options functionally exist which have either not been employed in some manner or for which [ ] Ricky would himself actually comply."

Additionally, while Osborne received no probationary services after he was placed on supervised release in 2003, he had an opportunity to receive such services in Illinois until that state rejected his transfer for failure to cooperate. The record before us is, at best, ambiguous as to whether Osborne or the Illinois authorities are to blame for the lack of communication and subsequent rejection of Osborne's probation. Osborne offered no evidence supporting his claim that he was unable to contact Illinois authorities and the district court, which was in the best position to assess his credibility, did not believe him. Against this backdrop, we cannot conclude that the district court abused its discretion.

## V.

■ Osborne argues that there were insufficient facts in the record to support the district court's conclusion that he posed a high risk to re-offend, but his juvenile record and certification study contain ample evidence to support that conclusion. He has a lengthy criminal history. His certification study reported that Osborne was dangerous because he "has engaged in multiple acts of personal aggression over a several-year period of time, the impact of his aggressiveness to the community is significant, he has used multiple weapons to be socially aggressive,

[and] he is an entrenched drug user." The study concluded that Osborne "presents as a treatment failure and * * * appears to represent a high likelihood of future dangerousness using predictive measures." Osborne asserts that he now intends to finish his GED, get a job, and be with his children. His probation officer noted in a certification report that, while Osborne has reported those same goals on several occasions, "these goals only seem to be a priority for Ricky when he has violated probation and is facing consequences for his non-compliance."

The district court had discretion to revoke Osborne's probation. It chose to do so after a full review of Osborne's lengthy history of criminal activity and chronic probation and treatment failures. We hold that the district court did not abuse its discretion.

Affirmed.

MEYER, Justice (concurring).

I concur in the majority's conclusion that the district court had discretion to revoke Osborne's probation and did so after engaging in the *Austin* analysis. I write separately to express my concern with revoking probation for a sentence that was imposed with the express understanding that significant probationary services would be needed for Osborne to successfully complete probation but as to where the system simply stood back and watched him fail because he is chemically addicted. The point of providing effective substance abuse treatment to a probationer is to give him a realistic opportunity to beat the addiction and become law-abiding. In this case, no effective substance abuse treatment was made available to Osborne, so it should come as no surprise that he continued to use the chemicals to which he was addicted.

The problem of substance abuse and its implications for the justice system was intensively studied by the Minnesota Supreme Court Chemical Dependency Task Force in two reports released in 2006:

*Report on Adult and Juvenile Alcohol and Other Drug Offenders* (Feb. 3, 2006), *available at* http://www.courts.state.mn.us/documents/0/Public/Problem_Solving_Courts/CD_Task_Force_Report_-_Adult_Juvenile_AOD_Offenders_-_2-06_-_FINAL.pdf [hereinafter *Task Force Report* I]; and *Report on the Overall Impact of Alcohol and Other Drugs Across All Case Types* (Nov. 17, 2006), *available at* http://www.courts.state.mn.us/documents/0/Public/Problem_Solving_Courts/CDTF_Second_Report_-_Final_(2).pdf [hereinafter *Task Force Report II* ]. The reports of the task force are recommended reading for any district court judge imposing a sentence on a chemically dependent individual. The primary message of the reports is a call for "a broad and fundamental shift in how Minnesota's courts deal with [alcohol and other drug]-addicted offenders, including greater collaboration among criminal and juvenile justice system participants (while not relinquishing their core roles and responsibilities) and creation of a comprehensive multi-phased plan to institute these changes." *Task Force Report I* at 10.

Among the conclusions of the task force, and most germane to this case, was the somewhat startling report that substance abuse treatment has virtually no positive measurable effect when provided to juveniles or to prison inmates. A review of over 1,600 program evaluations of in-prison programs targeted toward offenders with alcohol and other drug problems found that drug-focused group counseling interventions or traditional boot camp programs had no appreciable effect on re-arrest rates or re-incarceration rates. *Task Force Report II* at 52. The task force also notes that in one long-term study, offenders who attended in-prison alcohol and other drug treatment but were not provided continuing care in the community relapsed at the same rate as offenders who received no in-prison treatment at all. *Id.* The task force recommended that jailed offenders should be

given treatment and associated services for chemical dependency problems once they leave jail, and that the judicial branch in particular should give this issue further attention. *Id.* at 53. In particular, the task force noted, "violent offenders who are chemically dependent should receive all of the necessary treatment services, both while incarcerated and upon re-entering the community, to prepare them for optimal success." *Id.*

In this case, Osborne received some chemical dependency counseling as a juvenile and attended an in-prison program but he received no aftercare. That he failed at treatment is a true statement. According to the studies, his failure is expected. If district court judges are ordering substance abuse treatment to be provided as a condition of probation, I would suggest that the offered treatment be reasonably calculated to achieve success.

PAGE, Justice (concurring).

I join in the concurrence of Justice Meyer.

HANSON, Justice (concurring).

I join in the concurrence of Justice Meyer.

PAGE, Justice (concurring).

I concur in the result reached by the court. On the record presented, while a close question, the district court did not abuse its discretion when it revoked Osborne's probation. I also agree with the comments made by Justice Meyer in her concurrence.

I write separately to simply note that, while it is true, as the district court found, that Osborne was a high risk to re-offend, it is also true, on the record presented, that his risk of re-offense at the time his probation was revoked was no higher than it was when he was first placed on proba-

tion. If anything, his risk of re-offense may have even been less than it was at the time he was placed on probation. Notwithstanding Osborne's marijuana use (which the district court apparently found to be a minor concern), the record appears to support Osborne's contention that, while on probation, he had gone the longest period in his life without offending.

MEYER, Justice (concurring).

I join in the concurrence of Justice Page.