*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1371**

State of Minnesota,
Respondent,

vs.

Paul Harold Hilsgen,
Appellant.

**Filed July 7, 2014
Affirmed
Reyes, Judge**

Meeker County District Court
File No. 47CR10851

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Tony Spector, Meeker County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Hooten, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal from the revocation of his probation, appellant argues that the district court abused its discretion by determining that his probation violations were intentional

and inexcusable and that the need for confinement outweighed the policies favoring probation. We affirm.

## FACTS

In 2010, appellant Paul Hilsgen pleaded guilty to third-degree criminal sexual conduct involving a mentally impaired victim in violation of Minn. Stat. § 609.344, subds. 1(d) and 2 (2010), and was placed on supervised probation with the conditions that he (1) successfully complete sex-offender treatment and follow all aftercare; (2) have no unsupervised contact with minor children; and (3) have no contact with vulnerable adults. Prior to the probation violation at issue on appeal, the district court found Hilsgen in violation of his probation on four occasions for having unsupervised contact with minors, possessing or having access to a firearm as a convicted felon while on probation, and failing to complete sex-offender treatment and follow aftercare recommendations.

In March 2013, Hilsgen began working for a construction contractor remodeling a garage at a care facility for vulnerable adults, and he did not tell his supervisor or anyone at the care facility about his conviction and restrictions. Despite the requirements of a safety plan developed with his therapist, Hilsgen did not report this job to his corrections agent until two days after it was completed. Moreover, he never contacted the facility's manager, reporting in a group-therapy session that he had forgotten about this requirement and that he thought the situation was fine, even though he knew it could be a violation of his probation. The garage where the construction work took place was adjacent to the residents' recreation area and Hilsgen admitted that some of the residents talked with him.

2

Additionally, in April 2013, while waiting to meet with his therapist for sex-offender treatment, Hilsgen sat in the only available seat in the reception area, which was next to a girl who he thought to be 16 or 17 years old. Even though there was standing room and other chairs became available, Hilsgen did not move away from the girl until his therapist retrieved him from the waiting room.

After considering testimony from Hilsgen's corrections agent, the care facility's manager, and Hilsgen at a contested probation-revocation hearing, as well as a letter from his therapist, the district court found that Hilsgen demonstrated (1) a lack of comprehension of the risk involved with being unattended with minors; (2) an inability to apply the education he repeatedly received in sex-offender treatment about avoiding high-risk situations; (3) a lack of comprehension about community-safety issues causing grave concern for public safety; (4) inadequate progress toward achieving his community-safety goals; and (5) willful and inexcusable violations of the conditions of his probation. The court found that the need for confinement outweighed the policies favoring probation and that the seriousness of the violation would be unduly depreciated if the court did not revoke Hilsgen's probation. Based on this conclusion, the district court revoked Hilsgen's probation and executed his 42-month sentence plus a five-year conditional-release term. This appeal followed.

## DECISION

If an offender violates probation, the district court may continue probation, impose intermediate sanctions, or revoke probation and impose the stayed sentence. Minn. Stat. § 609.14, subd. 3(2) (2012). Under *State v. Austin*, the district court must make findings

3

regarding three factors before it can revoke probation: (1) the specific condition of probation that has been violated; (2) the violation was intentional or inexcusable; and (3) the need for confinement outweighs the policies favoring probation. 295 N.W.2d 246, 250 (Minn. 1980). These findings assure that the district court creates a "thorough, fact-specific record[] setting forth [its] reasons for revoking probation" and "prevent[] courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). The district court's determination that sufficient evidence exists to revoke probation is reviewed for abuse of discretion. *Austin*, 295 N.W.2d at 250. Whether the district court satisfied the requirements under *Austin* to revoke probation is a question of law that is reviewed de novo. *Modtland*, 695 N.W.2d at 605.

## I.     Conditions were violated and violations were intentional or inexcusable

Hilsgen argues that the evidence is insufficient to conclude that his probation violations were intentional and inexcusable because he did not know that the residents at the care facility were vulnerable adults and because the seat next to the minor was the only available seat and he was not unsupervised. We disagree.

The record demonstrates that Hilsgen knew, after his first day of working at the care facility, that the residents were vulnerable adults, having discussed the issue with his therapist and developed a safety plan to allow him to continue working on the care-facility project. Hilsgen made no effort to contact the facility manager and did not inform his corrections agent until after the job was complete, intentionally disregarding the plan put in place with his therapist, and he continued to work at the facility despite his

4

knowledge that he might be in violation of his probation conditions. This establishes an intentional and inexcusable violation of the specific requirement that Hilsgen have no contact with vulnerable adults.

With respect to having unsupervised contact with a minor, Hilsgen admitted that he chose to sit next to a girl, even though he identified her as being 16 or 17 years old. It is undisputed that no one in the waiting room was approved to supervise Hilsgen with minors, establishing his violation of the specific requirement that he not have unsupervised contact with a minor. While Hilsgen argues that it is unreasonable to expect him to recognize that sitting next to a minor constituted unsupervised contact with her, his previous probation violation for having unsupervised contact with a minor occurred when he had contact with his minor grandchild in the presence of the child's parents, indicating that Hilsgen should have known that any contact with a minor without approved supervision could constitute a violation. Hilsgen also contends that it is unrealistic to assume that he "will perfectly execute his education and training each and every time it may be necessary," but a key portion of Hilsgen's treatment program is being able to recognize and avoid high-risk situations. Even though he recognized that the girl in the waiting room was a minor, he chose to sit next to her anyway. If this was not intentional, it was certainly inexcusable given his previous violations and education. *See Austin*, 295 N.W.2d at 250 (district court must determine that the violation was intentional *or* inexcusable).

## II.    Need for confinement outweighs policies favoring probation

When assessing whether revocation is proper under the third *Austin* factor, the district court should provide specific reasoning as to whether (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "correctional treatment . . . can most effectively be provided if [the offender] is confined"; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607.

Hilsgen contends that he was making some progress in his sex-offender treatment, making it unfair of the district court to assess that he did not comprehend what he was learning, and argues that applying what one has learned is wholly different from comprehending what one has learned. He also argues that the district court's decision was just a reflexive reaction to his "accumulation of what are mostly technical violations." *See Austin*, 295 N.W.2d at 251 ("The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." (quotations omitted)). We disagree.

While the district court did comment on the number of violations Hilsgen has accumulated, it assessed that the current violations are not technical and that Hilsgen cannot be counted on to avoid antisocial behavior. The district court's analysis demonstrates that it looked at Hilsgen's underlying crime, which Hilsgen admits was a crime of opportunity, and compared it to his current and past violations, where he did not heed his education and training to avoid high-risk situations that presented the

opportunity for re-offense. This analysis supports the district court's conclusion that the longstanding efforts at treatment have not mitigated the risk of further criminal activity and that the need for confinement outweighs the policies favoring probation because Hilsgen is a risk to public safety. *See State v. Osborne*, 732 N.W.2d 249, 253 (Minn. 2007) (stating that probation revocation is generally appropriate when "the original offense and the intervening conduct of the offender [show] that confinement is necessary to protect the public, provide correction, or avoid unduly depreciating the seriousness of the offense" (quotations omitted) (emphasis removed)).

**Affirmed.**