*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0392**

State of Minnesota,
Respondent,

vs.

Larry Brian Olson,
Appellant

**Filed September 22, 2014
Affirmed
Worke, Judge**

Crow Wing County District Court
File Nos. 18-CR-12-3537, 18-CR-11-4444

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Brainerd, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant argues that the district court erred by finding that he violated his probation by failing to notify his agent of an address change and by revoking probation

after holding appellant to a heightened standard because he received a dispositional departure. We affirm.

## FACTS

On October 14, 2011, appellant Larry Brian Olson[1] was charged with multiple controlled-substance-crime offenses after officers seized approximately four pounds of marijuana from his property. In February 2012, Olson entered an *Alford* plea to one count of fifth-degree controlled-substance crime and was sentenced to 15 months in prison, stayed for five years. Olson allegedly violated the terms of his probation several times: first, by failing to complete a chemical-use assessment; next, by failing to remain law abiding for violating an order for protection; and then, by using morphine without a prescription.[2]

On August 1, 2012, Tod Strange, Olson's probation agent, visited Olson's home. Olson was discovered hiding in his garage where methamphetamine was discovered. After obtaining a search warrant, officers found approximately one ounce of methamphetamine. Olson was charged with two first-degree controlled-substance crimes. In July 2013, Olson entered an *Alford* plea to second-degree controlled-substance crime. Olson's presumptive sentence was 88 months in prison, but in accordance with the plea agreement, Olson was sentenced to 98 months in prison, stayed for 15 years, a downward dispositional departure. The district court took judicial notice that Olson's plea constituted a violation of his prior probation and reinstated him on probation.

---

[1] Olson is required to register as a predatory offender for ten years as a result of a conviction from 2006. Olson's registration requirement ends in 2023.
[2] It is unclear from the record how these alleged violations were resolved.

As part of his probation agreement, Olson was required to "notify [his] probation officer of any address, employment or telephone changes within 24 hours." Olson initially reported to Strange that he would be residing in Cass County at L.R.'s residence. Under those circumstances, Strange initiated a probation-transfer request from Crow Wing County to Cass County. Cass County officials denied the transfer because L.R. reported that Olson lived with him only on the weekends and stayed in Crosslake in Crow Wing County during the week. On November 5, 2013, Olson assured Strange that his primary address was at L.R.'s residence and that he stayed at a shack in Crosslake, but only up to two days a week because it is not equipped with running water. But on November 7, Agent Strange learned that Olson was no longer living at L.R.'s home because L.R. brought his guns back into the residence.

On November 14, 2013, Strange filed a probation-violation report, alleging that Olson violated the terms of his probation by failing to keep Strange informed of his address. On the same day, Olson called Strange and left several messages. In the first message, Olson reported that he no longer lived at L.R.'s residence. Later, Olson left a message stating that he had received a text message that officers were looking for him at the Crosslake address.

At a probation-violation hearing, Agent Strange described his supervision of Olson as "problematic." Based on his 22 years of experience supervising medium-to-high-risk offenders, Strange opined that Olson was not amenable to probation. While Strange conceded that both addresses were on file, he stated that Olson was inexplicably

"defiant" with providing his accurate living address, which violated probation's criteria and the criteria for predatory-offender registration.

After finding that Olson's specific violation of failing to report his address change was intentional and inexcusable, the district court concluded that Olson's need for confinement outweighed policies favoring probation and revoked probation and executed both prison sentences. This appeal followed.

**D E C I S I O N**

A district court has broad discretion in determining if sufficient evidence exists to revoke probation. *State v. Austin*, 295 N.W.2d 246, 249 (Minn. 1980). To revoke probation a district court must find: (1) a specific condition of probation was violated; (2) the violation was intentional or inexcusable; and (3) given the nature of the violation and the underlying offense, the policy favoring probation is outweighed by the need for confinement. *Id.* at 250. "The decision to revoke probation cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *State v. Osborne*, 732 N.W.2d 249, 253 (Minn. 2007) (quotation omitted). We will not reverse a district court's decision to revoke probation absent a clear abuse of its broad discretion. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

Olson argues that the district court improperly focused on the reporting of a primary address. But the district court revoked Olson's probation after finding that he violated two specific conditions. First, Olson failed to keep Strange advised as to the

4

place where he was living at all times. Second, Olson failed to report his address change within 24 hours.

Olson's probation agreement required him to notify Strange of an address change within 24 hours. Olson moved out of L.R.'s home on November 7 and only reported this on November 14 after he received a text message from someone alerting him that law enforcement was looking for him. Olson claims that Strange was aware of L.R.'s address and the address for the shack in Crosslake, but as the district court noted, Strange needed to know where to find Olson at all times. This is especially true because Olson was required to register as a predatory offender. Additionally, on November 14, Olson was alerted via text message that law enforcement was looking for him. Providing his probation agent with two addresses afforded him an opportunity to elude officers. In fact, if Olson had not been at his home on August 1, when Strange conducted a visit, Strange would have been forced to locate him at the second address, which would have provided an opportunity for Olson to be forewarned that law enforcement was looking for him. The two addresses eliminated the surprise of an agent's visit and compromised the agent's ability to adequately supervise Olson, a medium-to-high-risk offender.

While the district court stated that Olson's primary address was relevant, so that his agent knew where he was actually living, the distinction between a primary and a secondary address did not play a pivotal role in the district court's decision to revoke Olson's probation. Indeed, the district court issued a lengthy order and memorandum thoroughly explaining the several reasons for revoking Olson's probation. The district court considered that Olson (1) consistently confirmed that he was living at L.R.'s

5

residence and staying at the shack only on the weekends; (2) moved out of L.R.'s residence and failed to notify his probation agent of his address change within 24 hours; (3) allegedly violated his probation by failing to complete a chemical-use assessment; (4) is a medium-to-high risk offender; (5) violated the probation on his first case by being charged with additional controlled-substance crimes; (6) allegedly violated his probation by having traces of morphine detected in his urine; (7) only provided his address change after he received a text message that law enforcement was looking for him; (8) is required to register as a predatory offender from an unrelated crime; and (9) has several criminal-history points with two prior controlled-substance-crime convictions and three prior felony convictions. *See Osborne*, 732 N.W.2d at 254 (holding that district court did not abuse its discretion in revoking probation after considering offender violated his probation agreement, his underlying offenses—including conspiracy to commit first-degree controlled-substance crime—were severe, he had a lengthy criminal history, and he failed to cooperate with probation authorities).

The district court considered the *Austin* factors and determined that Olson intentionally and inexcusably failed to keep Strange advised as to his whereabouts and living location, which amounted to a serious violation that created a "cat-and-mouse" relationship with his probation agent that complicated Strange's ability to supervise Olson. The district court determined that Olson was not amenable to probation considering his history.

Olson also argues that the district court improperly held him to a higher standard because he had received a dispositional departure. But that is not an accurate reading of

6

the record. In determining whether Olson was amenable to probation, the district court stated that "since the inception of these cases [Olson] has not been amenable to probation." This is supported by the several alleged violations.

The district court further stated that Olson was given a dispositional departure because of evidentiary issues rather than his amenability to probation. The plea-hearing transcript shows that the parties agreed "that because of the nature of the evidentiary matter in this case that this [downward departure] would be the best resolution." In imposing the sentence, the district court stated that the downward departure was also done with the intent to keep Olson on probation for up to 15 years, finding that Olson may be amenable to treatment or of living a sober life. The district court did not make a finding that Olson was amenable to probation, only that he may be amenable to treatment. In revoking probation, the district court did not hold Olson to a higher standard because he was given a downward departure; rather, the district court questioned whether Olson was amenable to probation even at the time he received the downward departure.

**Affirmed.**