*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0333**

State of Minnesota,
Respondent,

vs.

Joshua Michael Allen,
Appellant.

**Filed September 14, 2015
Affirmed
Schellhas, Judge**

Itasca County District Court
File No. 31-CR-12-2728

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Muhar, Itasca County Attorney, Heidi M. Chandler, Assistant County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Hudson, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's revocation of his probation, arguing that the need for confinement did not outweigh the policies favoring probation. We affirm.

## FACTS

In November 2012, appellant Joshua Allen pleaded guilty to first-degree felony driving while impaired (DWI) and gross-misdemeanor violation of an order for protection (OFP). In December, the district court imposed sentences for both convictions, stayed execution of the sentences, and placed Allen on seven years' probation for the first-degree DWI conviction and two years' probation for the OFP-violation conviction. Allen's conditions of probation required him to refrain from alcohol and controlled-substance use, attend a Mothers Against Drunk Driving Impact Panel (MADD Panel), complete Minnesota Adult and Teen Challenge (Teen Challenge), complete the Intervention Program for Men, obtain a mental-health assessment and follow recommendations, and take medications in the prescribed dosage and frequency.

In July 2014, the Minnesota Department of Corrections filed a probation-violation report, alleging that Allen had (1) tested positive for amphetamines and benzodiazepines and admitted to consuming alcohol, (2) failed to attend the MADD Panel, (3) failed to complete the Intervention Program for Men, (4) failed to follow the recommendations of a mental-health assessment, and (5) admitted to not taking his medications as prescribed. At his probation-violation hearing in November, Allen admitted to consuming alcohol

and using the non-prescribed, mood-altering controlled substances, Adderall and Xanax, but contested the remaining alleged violations.

Based on Allen's admission and the hearing testimony, the district court found that Allen intentionally and inexcusably had violated the terms of his probation by using alcohol, amphetamines, and benzodiazepines; failing to comply with the recommendations of a mental-health assessment; and failing to take his medications as prescribed. The court also found that the need for confinement outweighed the policies favoring probation. The court revoked Allen's probation and executed his sentences.

This appeal follows.

**D E C I S I O N**

"A district court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Osborne*, 732 N.W.2d 249, 253 (Minn. 2007) (quotation omitted). If a district court finds that a defendant violated a condition of his probation after receiving a stay of execution, the court has "two basic options . . . (1) 'continue such stay and place the defendant on probation or order intermediate sanctions . . . ,' or (2) 'order execution of the sentence previously imposed.'" *State v. Barrientos*, 837 N.W.2d 294, 298–99 (Minn. 2013) (quoting Minn. Stat. § 609.14, subd. 3(2) (2014)). "The decision to revoke probation cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he . . . cannot be counted on to avoid antisocial activity." *Osborne*, 732 N.W.2d at 253 (quotation omitted). "To revoke probation and execute the sentence, . . . the district court must make

3

certain findings required by *State v. Austin*, 295 N.W.2d 246 (Minn. 1980)." *Barrientos*, 837 N.W.2d at 299. Specifically, the court must find that the defendant violated a "specific condition or conditions" of his probation, that "the violation was intentional or inexcusable," and that the "need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250.

Allen does not challenge the district court's first and second *Austin* findings; he challenges the court's third *Austin* finding that the need for confinement outweighs the policies favoring probation. In determining whether the need for confinement outweighs the policies favoring probation, the district court "must bear in mind that policy considerations may require that probation not be revoked even though the facts may allow it and that the purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005) (quotations omitted). The court also "must balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base [its] decisions on sound judgment and not just [its] will." *Id.* at 606–07 (quotations omitted). The court "should refer" to the 1970 American Bar Association Standards for Criminal Justice statement that

> [r]evocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i)   confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii)  the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

4

> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Austin*, 295 N.W.2d at 251 (quotation omitted).[1]

The district court determined that confinement is necessary to protect the public from further criminal activity by Allen and that Allen is in need of correctional treatment that can most effectively be provided in confinement. Allen challenges both of these determinations.[2] Allen first argues that an alternative to incarceration is available, namely, the Teen Challenge Aftercare Program (Aftercare Program). He successfully completed the primary-care program at Teen Challenge on January 30, 2014, and argues that, considering his long history of chemical use, "it would be naïve of any court to believe that [his] long-term success was likely to occur without some bumps in the road" and that the Aftercare Program is an appropriate rehabilitative resource to address his behavior.

The district court addressed Allen's history of criminal offenses, noting that many of the offenses involved the use of alcohol or controlled substances. The court also noted that Allen has had 10 or 11 treatment opportunities, one of which included relapse prevention services, but has failed to maintain sobriety. The court accordingly found that Allen has a high risk of continued use. The court also reflected on the seriousness of

---

[1] "In the years since *Austin*, the ABA has amended the standards and removed this statement. *See* ABA Standards for Criminal Justice: Sentencing 18-7.3 cmt. (3d ed.1994). In 2005, however, th[e supreme] court repeated Austin's direction to follow the 1970 draft in *Modtland*." *Osborne*, 732 N.W.2d at 253.

[2] Allen also argues that it would not unduly depreciate the seriousness of the violation if his probation were not revoked. But the district court made no determination to the contrary. We therefore do not address this argument.

Allen's offenses of first-degree DWI and violation of an OFP. Given the seriousness of Allen's offenses, the historic relationship between his criminal activity and use of alcohol and controlled substances, and his failure to maintain sobriety and otherwise comply with probation, the court acted well within its discretion in determining that the need to protect the public from further criminal activity by Allen outweighs the policies that favor probation.

In arguing that the Teen Challenge Aftercare Program is a proper alternative to incarceration, Allen maintains that "confinement in the controlled environment of a prison is exceedingly unlikely to have any beneficial effect on his ability to refrain from antisocial behavior in the community." The district court considered the Teen Challenge Aftercare Program, noting that it was a fairly new program and that Teen Challenge already had provided Allen with relapse prevention and transition services, which had failed ultimately. The court also noted that Allen previously had found sober housing but had chosen to leave it in order to live in an environment that was unconducive to his continued sobriety. The district court did not abuse its discretion by revoking Allen's probation and executing his sentences.

**Affirmed.**