*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1103**

State of Minnesota,
Respondent,

vs.

R.A.G.,
Appellant.

**Filed December 21, 2015
Affirmed
Chutich, Judge**

Ramsey County District Court
File Nos.  62-JV-13-2219
62-CR-15-4760

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

R.A.G. appeals a district court order revoking his extended-jurisdiction juvenile probation and executing his adult sentence. He argues that the district court abused its discretion because its decision to revoke was not supported by clear-and-convincing evidence. Because we conclude that the district court's decision is well-supported by the record, we affirm.

## FACTS

When R.A.G. was fifteen years old, he was charged with first-degree assault for the benefit of a gang, first-degree aggravated robbery for the benefit of a gang, aiding and abetting first-degree assault, and aiding and abetting first-degree aggravated robbery.

According to the probable-cause statement, the victim of the offense was walking near a party in Saint Paul when a young male hit him on the head and knocked him down. Witnesses reported that a group of young men affiliated with local gangs began hitting and stomping on the man. Two men, one of whom was identified by a witness as R.A.G., kicked the man, went into his pockets, and pulled off his pants. When the police arrived, the victim was on his back on the ground with his shirt and pants off, bleeding from the nose, and unresponsive. He was admitted to the hospital with severe and potentially fatal brain swelling. According to the probation officer's report, his injuries were so severe that he was placed in a medically-induced coma and suffered permanent brain damage. The victim had no known connection to R.A.G.

The state filed a motion for non-presumptive certification. R.A.G. pleaded guilty to first-degree assault and, in exchange, the state withdrew its certification motion and dismissed all remaining charges. Following the plea agreement, the district court adjudicated R.A.G. delinquent, sentenced him to 103 months in prison, stayed the execution of that sentence, and placed him on extended-jurisdiction juvenile probation. *See* Minn. Stat. § 260B.130, subd. 1(3) (2014). As conditions of his probationary sentence, R.A.G. was required to complete an 18- to 24-month placement at the Minnesota Correctional Facility in Red Wing, have no contact with known gang members, and remain law-abiding.

R.A.G. had been at Red Wing for fourteen months when he became eligible for a short-term furlough to Auburn Lake Academy to prepare him for his eventual transition to independent living. R.A.G. began his furlough on February 17, 2015, and absconded three days later. A warrant issued for his arrest. On May 10, 2015, nearly two months later, Saint Paul police pulled over a car driven by a known gang member and found R.A.G. in the passenger seat. He fled on foot but was quickly arrested and charged with misdemeanor fleeing police and misdemeanor tampering with a motor vehicle.

At a probation revocation hearing, the state alleged that R.A.G. violated his probation by failing to complete programming at Red Wing and by having contact with a known gang member. R.A.G. admitted both violations, and the district court found that they were intentional and without any legal excuse. In addition, R.A.G. pleaded guilty to the charge of misdemeanor fleeing police on foot, and the tampering charge was dismissed. The hearing was continued for a disposition hearing, at which R.A.G. was

3

adjudicated delinquent on the misdemeanor fleeing charge and the parties argued over the proper disposition for his three proven violations, now also including failure to remain law-abiding.

R.A.G.'s probation officer submitted a probation violation report, with which the state agreed, recommending that the district court revoke R.A.G.'s extended-jurisdiction juvenile probation and execute his adult sentence. The probation officer opined that R.A.G. had "not made internal changes" in treatment. The probation officer reported that after he absconded from his furlough, R.A.G. committed at least one new offense, was found in a stolen car with a known gang member, and had been seen in "many postings on the internet glorifying gangs, guns and violence." The probation officer also reported that R.A.G. has been "seen in photos, videos, fighting in the street, holding guns or replica guns, and smoking marijuana."

R.A.G.'s counsel argued that he should be returned to Red Wing to complete programming, noting that he was only 17 and the district court would retain jurisdiction for approximately four more years. R.A.G.'s counsel acknowledged that R.A.G.'s behavior was rash, but argued that, given his youth and lack of family support, it should not outweigh his largely successful record at Red Wing in determining whether he is amenable to probation. On June 26, 2015, the district court issued a written order revoking R.A.G.'s extended jurisdiction juvenile probation and executing his adult sentence. R.A.G. appeals.

4

**DECISION**

A district court has broad discretion in determining whether to revoke probation, and this court will not reverse that decision absent a clear abuse of that discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980). Before revoking probation, however, the district court must perform a three-step analysis: it must designate the specific probationary conditions that were violated, find that the violation was intentional or inexcusable, and find "that [the] need for confinement outweighs the policies favoring probation." *Id.* at 250; *see also State v. B.Y.*, 659 N.W.2d 763, 768–69 (Minn. 2003) (holding that the *Austin* factors apply to extended-jurisdiction juvenile probation revocation proceedings).

The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations, but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity. *Austin*, 295 N.W.2d at 251. In creating a record of the three *Austin* findings, "courts must seek to convey their substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). "The required Austin findings ensure that the district court has fully considered any claims by the defendant that revocation is not warranted because his probation violation was either unintentional or excusable, or because revocation would be inconsistent with the public policies favoring probation." *State v. Cottew*, 746 N.W.2d 632, 637 (Minn. 2008). The "purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Modtland*, 695 N.W.2d at 606 (quoting *Austin*, 295 N.W.2d at 250).

5

**The Third *Austin* Factor**

R.A.G. does not contest the first two *Austin* factors and concedes that the only issue is whether the need for confinement outweighs the policies favoring probation. He argues that the district court abused its discretion because the record failed to establish by clear-and-convincing evidence that the need for confinement outweighed the policies favoring probation. He specifically contends that the district court erred by improperly considering three pieces of evidence: his 2012 delinquency adjudications, allegations in the probation officer's report, and the allegations in a dismissed misdemeanor charge. R.A.G.'s arguments are not persuasive.

When making a determination that the need for confinement outweighs the policies in favor of probation, a district court must find the presence of at least one of three subfactors: that (1) confinement is necessary to protect the public from further criminal activity by the offender; or (2) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (3) the seriousness of the violation would be unduly depreciated if probation were not revoked. *Modtland*, 695 N.W.2d at 607 (quoting *Austin*, 295 N.W.2d at 251).

Here, the district court found that all three subfactors were present. It found that confinement is necessary to protect the public from further criminal activity because R.A.G. is "entrenched in a gang lifestyle," "has exhibited significant violent and antisocial behavior," and treatment within the juvenile system has been ineffective. The district court also found that R.A.G. is in need of correctional treatment that can most

effectively be provided in confinement and that the seriousness of the violation would be unduly depreciated if probation were not revoked.

### Prior Delinquency Adjudication

R.A.G. contends that the district court erred in considering his prior conduct in its decision to revoke his probation. R.A.G.'s argument is based entirely on the prefatory language introducing the three need-for-confinement subfactors. *See Austin*, 295 N.W.2d at 251. *Austin* states that a district court should not revoke probation unless the court finds the presence of one of the three subfactors "on the basis of the original offense and the intervening conduct of the offender." *Id.* Accordingly, R.A.G. contends that district courts must not rely on past conduct to support a revocation decision. R.A.G.'s argument is unavailing because it ignores caselaw following *Austin*.

The language quoted in *Austin* was taken directly from a 1970 draft of the American Bar Association Standards for Criminal Justice. *Id.* In 2007, the Minnesota Supreme Court noted that the most recent version of the American Bar Association standards had been amended to remove the statement relied on by R.A.G. *State v. Osborne*, 732 N.W.2d 249, 253 (Minn. 2007) (citing ABA Standards for Criminal Justice: Sentencing 18-7.3 cmt. (3d ed. 1994)). The *Osborne* court also noted that, following the amendments, the supreme court "had repeated *Austin*'s direction to follow the 1970 draft." *Id.* (citing *Modtland*, 695 N.W.2d at 607).

But the *Osborne* court did consider the appellant's juvenile record, stating that "[d]espite the 1970 ABA Standards' direction to consider only the offense and intervening conduct, determining the threat to the public and the need for confinement

7

will, on occasion, require analysis of a defendant's juvenile record." *Id.* The *Osborne* court ultimately held that the district court did not abuse its discretion when it revoked the appellant's probation "after a full review of [his] lengthy history of criminal activity." *Id.* at 256.

Following *Osborne*, this court has affirmed probation revocations when a district court considered the defendant's criminal history. *See State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011) (holding that "appellant's criminal record supports rather than refutes his need for confinement and treatment").

This court has also cited *Osborne* for the proposition that the Minnesota Supreme Court affirmed and follows the "offense and the intervening conduct" language from *Austin*. *See, e.g.*, *State v. Allen*, No. A15-0333, 2015 WL 5312295, at *2 n.1 (Minn. App. Sept. 14, 2015) (citing *Osborne* to say "th[e supreme] court repeated Austin's direction to follow the 1970 draft in *Modtland*"); *State v. Risher*, No. A14-1142, 2015 WL 404696, at *2 n.1 (Minn. App. Feb. 2, 2015) (same). But these opinions are unpublished and may only be used as persuasive authority. *See* Minn. Stat. § 480A.08, subd. 3(b) (2014). To the extent that they contradict *Osborne* and *Rottelo*, we are bound to follow published authority. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010) (stating that this court "is bound by supreme court precedent and the published opinions of the court of appeals"). Applying this caselaw, we conclude that the district court did not err in considering R.A.G.'s delinquency history.

**Allegations in Probation Officer's Report**

Next, R.A.G. argues that the district court improperly relied on allegations in the probation violation report. The district court referred to the report, stating that R.A.G. "has been seen in many postings on the internet 'glorifying gangs, guns, and violence'" and "in multiple videos glorifying gang lifestyle, including violence, drug use, and weapons and fighting in the streets." R.A.G. notes that he only admitted to violating probation by a single contact with a known gang member and that the allegations in his probation officer's report "do not amount to clear and convincing evidence." His arguments lack merit.

R.A.G. does not cite any caselaw to support his assertion that the district court improperly considered his probation officer's allegations. The district court did not treat these allegations as a separate violation. It considered them in determining whether the need for confinement outweighed the policies favoring probation. *See State v. Xiong*, 638 N.W.2d 499, 504 (Minn. App. 2002) (affirming a probation revocation when the district court considered conduct that was not alleged as a violation as "an aggravating factor" in its decision to revoke), *review denied* (Minn. Apr. 16, 2002).

Further, at the disposition hearing, the parties agreed that the probation officer's report, as well as all other documents in the court's file, could be considered by the district court. R.A.G. may not have admitted to the allegations as a probation violation, but the probation officer's report was properly admitted into evidence, and the district court implicitly found its allegations to be credible. Accordingly, the district court did

9

not abuse its discretion by giving weight to the allegations in the probation officer's report.

### Allegations in Dismissed Misdemeanor Charge

Finally, R.A.G. contends that the district court improperly relied on a dismissed tampering with a motor vehicle misdemeanor charge when it stated that R.A.G. was "found in a stolen vehicle with a known gang member." Again, R.A.G. does not cite any caselaw to support his argument; he simply notes that he was never asked about the status of the car and that the charge was dismissed. This argument is unavailing.

The information about the stolen car is also contained in the probation officer's report, which, as discussed earlier, was properly considered by the district court. The district court did not treat it as another violation, but mentioned it to support its finding that R.A.G.'s confinement is necessary to protect the public. Further, even if the district court improperly considered the allegation that the car was stolen, it did not rely on that fact at all. It did not imply that R.A.G. stole the car and made only one reference to the car among more salient facts, including: the details of the underlying offense; R.A.G.'s past violent conduct; his admitted probation violations; allegations of continued gang affiliation; and the admitted misdemeanor charge of fleeing the police on foot. We conclude that the district court did not abuse its discretion by considering the allegation that R.A.G. was found riding in a stolen vehicle.

### Additional Arguments

R.A.G. makes two additional arguments. He asserts that a return to Red Wing for additional programming would be "an appropriate and measured response to his first

10

violation." He also contends that rehabilitation is a process and that he "still has time under the Extended Jurisdiction Juvenile statute to become a productive member of society." R.A.G. does not cite any caselaw to support either of these arguments, except to state that "*Austin* and *Modtland* are based on the principle that a decision to revoke probation must be thoughtful, not reflexive."

Here, the district court made findings on all of the *Austin* factors, including the three subfactors required to determine that the need for confinement outweighs the policies in favor of probation. The district court found that "R.A.G. is entrenched in a gang lifestyle," that he "has exhibited significant violent and antisocial behavior," and that "[j]uvenile probation has been ineffective and it is unlikely that any further juvenile programming or community programming as an adult would be effective." The district court also found that R.A.G.'s previous treatments have failed to rehabilitate him: it stated that "low-risk probation and community service have had no impact," that R.A.G. failed intensive supervised probation, did not attend classes at the Evening Learning Center, and committed the underlying violent offense after completing a previous out-of-home treatment program. These findings are supported by the record.

Further, the record reflects that the district court did not make a reflexive decision to revoke, but carefully considered R.A.G.'s arguments. The district court not only continued the revocation hearing for a separate disposition hearing, it also agreed to allow the parties to file additional memoranda citing caselaw and the record. The district court acknowledged at the disposition hearing that "this is obviously a really important

11

decision about [R.A.G.'s] life and about the community" and agreed not to make a decision until reading the parties' submissions.

The details of the underlying offense, R.A.G.'s failure to complete treatment, his continued association with known gang members, and his juvenile delinquency history all support the district court's finding that confinement is necessary to protect the public from further criminal activity. Because that finding is sufficient to support the conclusion that the need for confinement outweighs the policies favoring probation, the district court did not abuse its broad discretion when it revoked R.A.G.'s extended-jurisdiction juvenile probation and executed his adult sentence.

**Affirmed.**