*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0178**

State of Minnesota,
Respondent,

vs.

Jarvaughn Douglas Washington,
Appellant.

**Filed August 29, 2016
Affirmed
Jesson, Judge**

Hennepin County District Court
File No. 27-CR-11-17038

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Stauber, Judge; and Jesson,

Judge.

## UNPUBLISHED OPINION

**JESSON**, Judge

In this probation-revocation appeal, appellant Jarvaughn Washington argues that the

district court abused its discretion by revoking probation and executing his prison sentence

after finding that the need for confinement outweighed the policies favoring continued probation. Because the district court thoroughly considered the necessary factors before revoking probation after Washington's third violation, we affirm.

**FACTS**

In January 2013, Washington pleaded guilty to third-degree sale of a controlled substance. Because Washington admitted to having a firearm in his possession at the time of the offense, the presumptive sentence was 36 months in prison. Minn. Stat. § 609.11, subd. 5(a) (2010). The district court imposed the 36-month sentence but stayed execution and placed Washington on probation. The district court cited Washington's amenability to probation and chemical-dependency treatment as well as his acceptance of responsibility as reasons for the sentencing departure. The district court ordered Washington to abstain from alcohol and non-prescribed chemicals, to submit to random testing, to complete chemical-dependency treatment, and to remain law abiding.

In September 2013, probation filed a violation report alleging that Washington had failed to submit to drug testing, had failed to abstain from illegal drugs, had been discharged from chemical-dependency treatment with New Perspectives for using opiates and PCP, and had been arrested for a drug offense and a misdemeanor theft offense. Probation later filed an amended violation report noting that Washington had been charged with fifth-degree possession of a controlled substance. Washington admitted to failing to submit to drug testing and to being terminated from chemical-dependency treatment. The district court found Washington in violation of probation and imposed 365 days in jail as

a consequence. Before completing the full 365 days, Washington was furloughed to a drug-treatment program in March of 2014.

Probation filed a second violation report in August 2014. The report alleged that Washington failed to submit to drug testing 13 times, tested positive for opiates several times, tested positive for alcohol twice, and was charged with misdemeanor trespassing. Probation later amended the report to include Washington's failure to comply with a one-doctor-one-pharmacy rule the district court had put in place to prevent Washington from abusing prescription drugs. The amended report also noted that Washington now had three pending charges: the new trespassing charge and the still-unresolved theft and fifth-degree controlled-substance charges.

In October 2014, Washington pleaded guilty to the pending controlled-substance charge and admitted the probation violation. As a consequence for both the new offense and the probation violation, the district court ordered Washington to serve 365 days in jail but granted him an immediate furlough to a drug treatment program.

On July 27, 2015, probation filed a third violation report. It alleged that Washington had tested positive for opiates several times, had tested positive for cocaine, and had tested positive for alcohol three times. The report was later amended to allege that after Washington's July 29 release from jail, he submitted positive tests for alcohol, cocaine, heroin, and other opiates.

Washington admitted to consuming alcohol. He also admitted to testing positive for heroin but denied actually using it. The district court found that Washington intentionally and inexcusably violated probation only as to the alcohol.

Washington's probation officer recommended that the stayed sentence be executed. She noted that Washington had been referred to chemical-dependency treatment on four occasions. Despite this, probation indicated that Washington had tested positive for drugs or alcohol 19 times between June 3, 2015 and September 10, 2015. Additionally, probation mentioned the controlled-substance offense Washington committed while on probation. Finally, probation noted that Washington received a dispositional departure. He was told at his sentencing hearing that probation would give him one opportunity for treatment, and that if he failed, probation would recommend execution of his sentence.

Washington's attorney asked that he be continued on probation. She argued that his drug use was the result of chronic pain. She also stated that Washington had completed chemical-dependency and cognitive skills programming while on probation. At the time of the most recent violation, Washington was receiving additional treatment from New Perspectives. Since that violation, he had continued to work with the program.

The district court found that the need for confinement outweighed the policies favoring continued probation, revoked Washington's probation, and executed his 36-month prison term. This appeal follows.

## D E C I S I O N

Before revoking a probationary sentence, the district court must: 1) identify the specific condition or conditions violated; 2) find that the violation was inexcusable or intentional; and 3) conclude that the need for confinement outweighs policies in favor of probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980) (collectively referred to as "the *Austin* factors"). The district court must make specific findings that establish the

4

"substantive reasons for revocation and the evidence relied upon" and may not simply "recit[e] the three factors and offer[] general, non-specific reasons for revocation." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). The district court has broad discretion in determining whether there is sufficient evidence to revoke probation and may be reversed only for a clear abuse of that discretion. *Id.* at 605.

Washington does not challenge the district court's findings on the first two *Austin* factors: the specific condition violated and that the violation was inexcusable or intentional. Washington argues, however, that the district court abused its discretion by revoking probation because the final *Austin* factor was not met: that the need for imprisonment outweighed the policies favoring continued probation. The supreme court has instructed that, when making findings on the third *Austin* factor, the district court should consider whether:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251). "The decision to revoke probation cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *State v. Osborne*, 732 N.W.2d 249, 253 (Minn. 2007) (quotation omitted).

In addressing the final *Austin* factor, the district court focused on Washington's need for "correctional treatment which can most effectively be provided if he is confined." *Modtland*, 695 N.W.2d at 607 (quotation omitted). The district court noted that this was Washington's third probation violation. Despite attending multiple community-based chemical-dependency programs, Washington continued his chemical use. The district court stated that Washington had been given "enough chances to succeed on the outside and now really what's left is to succeed on the inside" and that "the best way, I think, to try to get you the help you need to deal with this addiction is on the inside in prison where they do have programs." The record shows that the district court carefully considered the appropriate factors before concluding "that the policies that normally favor probation, which have allowed you to remain on probation through three violations, really now are outweighed."

Washington argues that because community-based chemical-dependency programming remained available, it was not appropriate to revoke his probation and execute his sentence. But contrary to Washington's assertion, it does not appear that any additional community-based options were available to treat his chemical-dependency issues. Washington's final probation violation report noted that "[p]robation has exhausted all resources." Washington points out that at the time of his third violation, he was working with New Perspectives and that this program was willing to continue working with him. But, prior to his first probation violation, Washington was discharged from this same program for using narcotics during treatment. The fact that he used during his initial experience with New Perspectives and then violated his probation by using alcohol while

6

working with New Perspectives a second time shows that the program was not an effective option. The record supports the district court's finding that Washington was in need of correctional treatment that could best be provided in prison.

Washington also argues that curing a chemical addiction that stems from physical pain takes time and that the district court revoked his probation prematurely. But Washington's final probation violation was not for using a pain killer or other opiate; it was for alcohol consumption. Moreover, the district court gave Washington multiple chances over a two-and-one-half year period. This is not a case in which the district court reflexively revoked probation in response to technical violations. *See Osborne*, 732 N.W.2d at 253. Washington's violations included failure in treatment, relapses, and even a new felony controlled-substance conviction. His behavior demonstrated that he could not "be counted on to avoid antisocial activity." *See id.*

In addition, the presumptive sentence for Washington's offense was an executed 36-month prison term. The district court noted this fact before revoking Washington's probation: "I have to look at the number of times you've had an opportunity to succeed on probation *especially in a case where the presumption is a prison commit*." (Emphasis added.) When considering whether to revoke probation, it is appropriate for the district court to have "[l]ess judicial forbearance . . . for persons violating conditions of a stayed sentence who were convicted of a more severe offense." Minn. Sent. Guidelines III.B (Supp. 2011). We have also indicated that the district court may give a probationer less leeway when the offender initially received a downward dispositional departure. *State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015), *aff'd*, ___ N.W.2d ___ (Minn. Aug. 17,

7

2016); *see also State v. Moot*, 398 N.W.2d 21, 24 (Minn. App. 1986) (affirming revocation of probation after probationer's failure to cooperate with treatment, when the district court made it clear that the presumptive sentence was commitment to prison and the downward departure was *solely* to permit "one last opportunity to succeed in treatment"), *review denied* (Minn. Feb. 13, 1987). Washington received a downward dispositional departure for a serious offense that the legislature has determined should generally result in prison. This further supports the district court's decision to revoke his probation.

After receiving a downward dispositional departure, Washington showed through multiple probation violations that community-based treatment was not working. The district court gave Washington every opportunity to succeed outside of prison before reaching the thoughtful and reasoned conclusion that the need for confinement had outweighed the policies favoring probation. The district court did not abuse its discretion by revoking Washington's probation and executing his prison sentence.

**Affirmed.**