STATE of Minnesota, Respondent,

v.

Patrick James MODTLAND, Appellant.

No. A04–17.

Supreme Court of Minnesota.

May 12, 2005.

Susan Andrews, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Minnesota Attorney General, St. Paul, MN, Norman J. Loren, Kanebec County Attorney, Mora, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

Appellant Patrick James Modtland appeals from an unpublished decision by the court of appeals holding that the district court did not abuse its discretion when it revoked Modtland's probation because Modtland did not object to the court's failure to make two of the three findings required by *State v. Austin*, 295 N.W.2d 246, 250 (Minn.1980) and because the probation revocation hearing record contained sufficient evidence to demonstrate that the *Austin* factors had been satisfied. *State v. Modtland*, No. A04–17, 2004 WL 1774771 *1, *3 (Minn.App. Aug.10, 2004). We reverse.

On January 28, 2003, Modtland burglarized a home in Mora, Minnesota, taking various household items and several firearms. Modtland was charged in Kanabec County District Court with first-degree burglary while possessing a firearm in violation of Minn.Stat. § 609.582, subd. 1(b) (2004); second-degree burglary in violation of Minn.Stat. § 609.582, subd. (2)(a) (2004); theft of firearms in violation of Minn.Stat. § 609.52, subds. 2(1), 3(1) (2004); and third-degree criminal damage to property

in violation of Minn.Stat. § 609.595, subd. 2(a) (2004).

Modtland pleaded guilty to the first-and second-degree burglary charges on May 1, 2003. At sentencing, the judge stayed the execution of Modtland's 107–month sentence on the condition that Modtland complete the Minnesota Teen Challenge Program (MTC). The sentencing order specifically provided that "Defendant shall either be in the Teen Challenge program or in jail."

Modtland entered MTC on June 30, 2003—the day of his sentencing hearing—and was discharged three months later without completing the program. The discharge summary written by MTC's dean of men stated that on the day before Modtland was discharged he had an outburst with staff members in which he threatened to call a lawyer and insisted his rights were being violated. The discharge summary also stated that Modtland had "[grown] while in the program and there were moments where he was very genuine in his desire for help in the program, but his anger continued to flair up and hindered his progress."

Because the district court judge who originally sentenced Modtland was not available, the probation revocation hearing was presided over by another district court judge on October 6, 2003. At the revocation hearing, Modtland admitted that he had been discharged from MTC, but asked the court to allow him to return to the program. While he acknowledged that he had not expressed himself in the "right way" at MTC, he explained that he had become angry with the staff because medication he was taking to treat his stomach problems had been thrown away:

> [P]eople were praying for me to be healed for my stomach problems. I wasn't finding any relief. My medication accidentally ended up in the gar-

bage, and I felt it didn't end up in there by accident, and I was hurt, and I didn't believe what they were telling me, and I sit here, and I see them here willing to take me back, and I know in my heart that that program can help me.

After Modtland's explanation of his behavior at MTC, the district court revoked Modtland's probation, stating:

> I think what might be helpful is for me to note that Mr. Modtland has waived his right to a contested hearing and entered an admission and agrees that he was in fact terminated involuntarily apparently from the Teen Challenge program. I think there are some confusions as to what exactly occurred, but getting to the bottom of those might not be exactly necessary for the revocation to be ordered, but it may become relevant on the issue of resentencing.
>
> So what I will do at this time is find that Mr. Modtland has waived his right to a contested hearing and there has been sufficient information provided by him and in a review of the file, including the report of [the probation officer], for me to find that he has in fact violated the terms of his probation by failing to successfully complete the program, and Mr. Modtland's probation is hereby revoked.

After revoking Modtland's probation based on Modtland's admission that he had been discharged from MTC, the district court then proceeded to what it described as a "resentencing" phase of the proceeding. The court heard testimony from MTC staff members and Modtland's probation officer in order to determine whether Modtland should be allowed to continue on probation and return to MTC.

The MTC program director testified that as a result of several "outbursts" by Modtland, he had concluded that MTC and

Modtland were not a "fit" and discharged Modtland. However, the director further testified that after reviewing Modtland's file and speaking with MTC's dean of men, he was willing to allow Modtland to return if he agreed to show more respect, refrain from having outbursts, and adopt a more positive attitude toward the program.

The district court then asked Modtland's probation officer for her recommendation. The probation officer stated that she believed Modtland was a "huge risk to public safety" and that because he was not amenable to the MTC program the "only alternative" was for the court to execute his sentence. The court agreed and executed Modtland's 107–month sentence.

The court cited several factors supporting the execution of Modtland's sentence. First, it noted that Modtland had seven criminal history points and had already been given a chance by his sentencing judge. In the court's view, Modtland did not deserve "one more chance" because he had learned to "manipulate the system." The court also told Modtland it was time that he "take some responsibility" for his behavior. In concluding that Modtland's sentence should be executed, the court did not find that Modtland's probation violation was intentional or inexcusable, nor did it find that the need for Modtland's confinement outweighed the policies favoring probation.[1]

Modtland appealed to the court of appeals, claiming that the district court failed to make findings as required by *State v. Austin*, 295 N.W.2d at 250, and that this failure constituted a basis for reversing the district court's revocation of his probation. *Modtland*, 2004 WL 1774771 at *1. The court of appeals affirmed the district court.

Modtland then filed a petition for review with this court, which was granted on October 19, 2004.

## I.

The issue that must be resolved in this case is whether the district court abused its discretion by revoking Modtland's probation without making two of the three required findings set forth in *State v. Austin*. 295 N.W.2d at 250. A district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249–50. However, whether a lower court has made the findings required under *Austin* presents a question of law, which is subject to de novo review. *Kornberg v. Kornberg*, 542 N.W.2d 379, 384 (Minn.1996) (stating questions of law reviewed de novo).

In *State v. Austin*, we considered whether the district court abused its discretion in revoking the probation of a defendant who had been released from jail in order to enter into a drug rehabilitation program. 295 N.W.2d at 248–50. We stated that the "threshold question" presented in the case was determining "what findings a trial court *must* make before revoking probation." *Id.* at 250 (emphasis added). Our inquiry was grounded in United States Supreme Court precedent establishing that defendants must be afforded procedural due process when courts revoke parole or probation. *See Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (setting forth "minimum requirements of due process" to be accorded defendants in parole revocation proceedings); *Gagnon v. Scarpelli*, 411

---

1. On the probation revocation order dated the day of Modtland's hearing, the court checked the boxes next to "Admits violation(s)," "Factual basis established," and "Willful violation found." Although the record contains no reference to the order, it presumably was filled out after the hearing.

U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (extending the holding in *Morrissey* to probation revocation hearings); *see also* Minn. R.Crim. P. 27.04. Accordingly, in *Austin* we announced the prospective rule that Minnesota courts must make three findings before revoking probation:

> For the future guidance of the lower courts, we adopt a three-step analysis which requires that before probation be revoked, the court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that the need for confinement outweighs the policies favoring probation.

295 N.W.2d at 250. Because the application of the rule was prospective, we reviewed the facts in the record before us to determine whether the district court abused its discretion in revoking the defendant's probation.

In the 25 years since *Austin*, our decision has been interpreted to allow for a "sufficient evidence exception" to the requirement that courts make the requisite three findings. *See, e.g., State v. Boushey*, No. A04–976, 2005 WL 288685, at *3 (Minn.App. Feb.8, 2005) (unpublished) (stating that the court of appeals has acknowledged a " 'sufficient evidence' exception"); *State v. Hlavac*, 540 N.W.2d 551, 552–53 (Minn.App.1995) (noting the " 'sufficient evidence' exception" and stating "[w]hen a district court has failed to make the three *Austin* findings, the reviewing court may nevertheless affirm the district court's revocation of a stayed sentence, provided that there is sufficient evidence in the record to support the necessary findings"); *State v. Theel*, 532 N.W.2d 265, 267 (Minn.App.) *review denied* (July 20, 1995); *State v. Wittenberg*, 441 N.W.2d 519, 521 (Minn.App.1989). While this reading of *Austin* has taken hold in the lower courts, we do not believe such an interpretation can be reconciled with the language of *Austin* itself.

■ The misreading of *Austin* to allow for a "sufficient evidence exception" was compounded in the court of appeals' decision in the case at hand when it stated that the *Austin* factors must only be addressed when "the probationer asserts at the probation revocation hearing that the state has presented insufficient evidence to satisfy the factors"—an analysis that appears to be based on an earlier court of appeals decision, *State v. Hlavac*, 540 N.W.2d at 553. *Modtland*, 2004 WL 1774771 at *2. However, *Austin* does not impose such a requirement on the defendant, and we clarify that defendants do not bear the burden of requesting that district courts make the required *Austin* findings.

■ Moreover, we reaffirm *Austin's* core holding that district courts must make the following three findings on the record before probation is revoked. 295 N.W.2d at 250. First, courts must designate the specific condition or conditions of probation the defendant has violated. *Id.* Second, courts must find the violation was inexcusable or intentional. *Id.* Once a court has made findings that a violation has occurred and has found that the violation was either intentional or inexcusable, the court must proceed to the third *Austin* factor and determine whether the need for confinement outweighs the policies favoring probation. *Id.*

■ In making the third *Austin* finding, we emphasize that district courts must bear in mind that "policy considerations may require that probation not be revoked even though the facts may allow it" and that "[t]he purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* When determining if revoca-

tion is appropriate, courts must balance "the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety," and base their decisions "on sound judgment and not just their will." *Id.* In this regard, our language in *Austin* regarding the careful balance between public safety and rehabilitation remains relevant today:

> To insure that both the probationer's and the public's needs are served, the trial courts should refer to the following found in the American Bar Association Standards for Criminal Justice regarding probation:
>
>> Grounds for and alternatives to probation revocation.
>>
>> (a) Violation of a condition is both a necessary and a sufficient ground for the revocation of probation. Revocation followed by imprisonment should not be the disposition, however, unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>>
>> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>>
>> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>>
>> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

295 N.W.2d at 251 (citing A.B.A. Standards for Criminal Justice, Probation § 5.1(a) (Approved Draft 1970)).[2]

**2.** In the years since *Austin,* the A.B.A. has replaced these standards with more general guidelines regarding the imposition of sanctions on criminal defendants. *See* ABA Standards for Criminal Justice: Sentencing, § 18-3.12(a)(i)–(iii) (3d ed. 1994).

**3.** Under Minn. R.Crim. P. 27.04, subd. 3(2), "[i]f the court finds that a violation of the

## II.

We now turn to the question of whether the district court made the findings required under *Austin* in the instant case. As to the first *Austin* factor, it is not disputed that Modtland was required to successfully complete the MTC program as a condition of his probation, and that at the revocation hearing Modtland admitted that he had been discharged from MTC. However, the record indicates some confusion on the part of the court regarding the significance of Modtland's admission and the steps necessary to revoke probation. Rather than making all three *Austin* findings *before* revoking probation, the court first concluded that

> there has been sufficient information provided by [Modtland] and in a review of the file, including the report of [the probation officer], for me to find that he has in fact violated the terms of his probation by failing to successfully complete the program, and Mr. Modtland's probation is hereby revoked.

The court then proceeded to what it described as a "resentencing" phase of the hearing, which involved taking testimony regarding whether Modtland should be returned to MTC.

*Austin* does not support this division of the revocation hearing into a "revocation" phase and a "resentencing" phase. Instead, *Austin* contemplates an evidentiary hearing in which the district court makes the requisite three findings *before* deciding whether to revoke the defendant's probation.[3] This process emphasizes that while

conditions of probation has not been established by clear and convincing evidence, the revocation proceedings shall be dismissed, and the probationer's probation continued under the conditions theretofore ordered by the court." It should also be noted that when a district court has found that a probationer has intentionally or inexcusably violated a

an intentional or inexcusable probation violation is a necessary condition for probation to be revoked, it is not a sufficient condition. Rather, once an intentional or inexcusable violation has been found, the court must proceed to an evaluation of whether the need for confinement outweighs the policies favoring probation. This process prevents courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation. *Austin*, 295 N.W.2d at 251 ("The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity.") (citation and quotation omitted).

▮▮▮▮ The requirement that courts make findings under the *Austin* factors assures that district court judges will create thorough, fact-specific records setting forth their reasons for revoking probation. We emphasize that, in making the three *Austin* findings, courts are not charged with merely conforming to procedural requirements; rather, courts must seek to convey their substantive reasons for revocation and the evidence relied upon. This comports with Minn. R.Crim. P. 27.04, subd. 3(4), which provides that "[a] verbatim record shall be made of the proceedings at the revocation hearing and in any contested hearing the court shall make written findings of fact on all disputed issues including a summary of the evidence relied upon and a statement of the court's reasons for its determination." [4] Thus, courts should not assume that they have satisfied *Austin* by reciting the three factors and offering general, non-specific reasons for revocation, as it is not the role of appellate courts to scour the record to determine if sufficient evidence exists to support the district court's revocation.

▮▮▮▮ We conclude that in this case the district court did not address either the second or third *Austin* factor before revoking probation. Accordingly, we reverse and remand for a new hearing in which findings are to be made on the record in accordance with the principles set forth in this decision.[5]

Reversed and remanded.

---

term of his probation, but finds under the third *Austin* factor that the defendant's sentence should not be executed, the court may, in light of the nature of the probation violation, alter the terms of the defendant's probation—including imposition of intermediate sanctions—under Minn.Stat. § 609.135 (2004).

4. The "written findings" requirement is satisfied by the district court stating its findings and reasons on the record, which, when reduced to a transcript, is sufficient to permit review. *See Pearson v. State*, 308 Minn. 287, 292, 241 N.W.2d 490, 493 (1976).

5. We note that Modtland has raised a number of issues in his pro se briefs, alleging, *inter alia*, that his constitutional rights were violated because MTC forced him to "submit to 'Faith Healing' that was clearly not working" and that MTC discharged him because of his medical problems without allowing him access to his probation officer or an attorney. Because we are reversing and remanding for a new hearing, we do not address Modtland's arguments here. To the extent Modtland believes there are constitutional dimensions to the revocation of his probation not raised at the original revocation hearing, he is free to raise those issues at the hearing on remand.