*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0673**

State of Minnesota,
Respondent,

vs.

Ian Charles Montana,
Appellant.

**Filed December 29, 2014
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-12-29588

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and

Bjorkman, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

On appeal from the revocation of his probation, appellant argues that the district court abused its discretion because the evidence does not establish that the need for his confinement outweighs the policies favoring probation. We affirm.

## FACTS

On August 31, 2012, appellant Ian Charles Montana demanded money from a victim, told the victim that he had a gun, and threatened to shoot the victim if he did not give him money. Montana was charged with second-degree aggravated robbery, in violation of Minn. Stat. § 609.245, subd. 2 (2012). Montana pleaded guilty, and on April 2, 2013, the district court sentenced Montana to 45 months in prison, stayed execution of the sentence for three years, and placed Montana on probation with several conditions, including completion of chemical-dependency treatment. The stayed sentence was a downward dispositional departure from the sentencing guidelines. The district court stated that it based the departure on Montana's acceptance of responsibility, need for services, cooperation in the case, and amenability to probation. At sentencing, Montana told the district court, "I am ready to go get myself into some treatment." Montana's counsel stated that Montana "recognizes the fact that should he violate any terms of his probation, that he would be going to prison for 45 months."

On May 14, 2013, Montana's probation officer filed a report alleging that Montana failed to complete treatment. At the probation-violation hearing, Montana admitted to violating terms of his probation by failing to complete treatment and admitted

2

that he had no excuse for the violation. The district court continued Montana's probation, stating that he must complete treatment.

On August 16, 2013, Montana's probation officer filed a second report alleging that Montana violated terms of his probation because he (1) failed to remain law-abiding by committing two new misdemeanor offenses and (2) failed to complete treatment. The district court continued the probation-violation hearing so that Montana could undergo a psychological evaluation. When the probation-violation hearing was held in November, Montana admitted to not completing treatment. Montana admitted that the violation was inexcusable. The district court again continued Montana's probation, directing that he be released to a treatment program. The district court stated that "this is probably going to be the end of the line" if he did not complete treatment. Montana responded that he understood.

On December 4, 2013, Montana's probation officer filed a third report alleging that Montana failed to complete treatment. The report stated that Montana "was caught drinking and was assaultive with staff" at the treatment program. At the probation-violation hearing, Montana's probation officer testified that he "tried everything within [his] power to provide Mr. Montana with every opportunity" and "to provide a successful environment for him," but he felt that Montana was no longer amenable to probation. The district court found that Montana was not able to succeed on probation. Specifically addressing whether the need for confinement outweighs the policies favoring probation, the district court stated that confinement is necessary in this case, given Montana's failed attempts at completing treatment. The district court also stated that Montana poses a risk

to public safety. The district court revoked Montana's probation and executed his 45-month sentence, with credit for 378 days. This appeal follows.

## DECISION

When a person on probation violates a condition of probation, the district court may continue probation, impose intermediate sanctions, or revoke probation and execute the stayed sentence. Minn. Stat. § 609.14, subd. 3(2) (2012). "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). But the decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations." *Id.* at 251 (quotation omitted). Instead, the state must persuade the district court that "the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* (quotation omitted). Before revoking probation, the district court must follow the three-factor analysis adopted in *Austin*: (1) specify which condition was violated, (2) find the violation to be intentional or inexcusable, and (3) find that the "need for confinement outweighs the policies favoring probation." *Id.* at 250.

Montana does not challenge the district court's findings on the first two *Austin* factors but challenges the third factor. The third *Austin* factor requires the district court to "balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base their decisions on sound judgment and not just their will." *State v. Modtland*, 695 N.W.2d 602, 606-07 (Minn. 2005) (quotations omitted). A district court may find that the third *Austin* factor is satisfied if any one of

the following subfactors is present: (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment" that can most effectively be provided by confinement; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Austin*, 295 N.W.2d at 251.

"The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* at 250. In *Austin*, the appellant violated his conditions of probation by failing to complete a drug-treatment program, and the district court revoked his probation based on the violation. *Id.* at 248-49. The Minnesota Supreme Court concluded that policy considerations required revocation in that case because "appellant has been offered treatment but has failed to take advantage of the opportunity or to show a commitment to rehabilitation." *Id.* at 251.

Here, Montana argues that even though he has not yet succeeded in treating his addiction, he has not given up fighting his addiction and should be given further opportunities to complete community-based treatment. Montana also argues that "every opportunity to do community-based treatment should be explored before a chemically dependent probationer is revoked for a treatment failure." But our caselaw does not require that the district court give probationers "every opportunity" to complete community-based treatment. Instead, our caselaw requires that the need for confinement outweigh the policies favoring probation before a district court revokes probation. *Id.* at 250.

The district court ordered Montana to complete chemical-dependency treatment as a condition of his probation. The district court gave Montana opportunities to successfully complete treatment at three different community-based treatment programs. After failing to complete treatment in each program, the district court found that confinement was necessary. The district court stated that it "hate[d] to have people have to go that route to get the treatment [but] it seems that the number of chances dictate that that's the only real choice left." The record demonstrates that Montana was given multiple chances to complete community-based treatment, and he was unsuccessful in each attempt. The record supports the district court's finding that community-based treatment failed in this case.

In addition, the district court found that Montana poses a risk to public safety, stating that the third probation violation occurred shortly after Montana was released from custody. The record shows that Montana was charged with new criminal offenses for disorderly conduct and trespass while on probation. And his third probation violation included assaulting a treatment program staff member. The record demonstrates that Montana also violated his probation by failing to maintain contact with his probation officer. The record supports the district court's finding that Montana poses a public-safety risk.

The third *Austin* factor is met if the record satisfies one of the three subfactors. *See id.* at 251 (listing the subfactors: "(i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or (iii) it

6

would unduly depreciate the seriousness of the violation if probation were not revoked"). Under the first subfactor, the record supports the conclusion that confinement is necessary to protect the public from further criminal activity because Montana failed to remain law-abiding while on probation and assaulted a treatment program staff member, resulting in a call to the police. Under the second subfactor, the record supports the conclusion that Montana's correctional treatment would be most effectively provided by confinement because Montana failed to avail himself of the multiple opportunities to complete chemical-dependency treatment outside of prison. Under the third subfactor, the record supports the conclusion that not revoking probation would unduly depreciate the seriousness of Montana's violations because the district court had warned Montana that he would be sent to prison if he violated probation and, despite the warnings, Montana continued to violate his conditions of probation.

Because the record supports the district court's finding that the need for confinement outweighs the policies favoring probation, we conclude that the district court acted properly within its broad discretion by revoking Montana's probation and executing his sentence.

**Affirmed.**