*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2058**

State of Minnesota,
Respondent,

vs.

Phillip Andrew Jones,
Appellant.

**Filed July 6, 2015
Reversed and remanded
Reyes, Judge**

Hennepin County District Court
File No. 27CR1322820

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica Surges Shacka, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

In this probation-revocation appeal, appellant argues that because the district court revoked his probation without first making the required findings under *State v. Austin*,

295 N.W.2d 246 (Minn. 1980), the revocation order must be reversed, and appellant must be reinstated on probation. We reverse and remand for additional findings.

**FACTS**

On July 16, 2013, appellant Phillip Andrew Jones was charged with one count of first-degree aggravated robbery and one count of third-degree assault. Appellant pleaded guilty to first-degree aggravated robbery as part of a plea deal in which the third-degree assault charge was dismissed. In accordance with the terms of the deal, the district court sentenced appellant to 81 months, stayed for a five-year probationary period. Appellant was also sentenced to serve 365 days in the Hennepin County workhouse. The plea agreement represented a downward-dispositional departure.

Prior to sentencing, the parties agreed that appellant would report to the workhouse on January 7, 2014. However, the report date was extended to January 28, 2014, after appellant's child passed away. The new report date was made a condition of appellant's probation, and he expressly told the district court that he would turn himself in to the workhouse on January 28, 2014. Appellant was also required to maintain contact with his probation officer.

Appellant failed to turn himself in to the Hennepin County workhouse as directed. On February 12, 2014, appellant's probation officer filed a probation-violation report based on appellant's failure to turn himself in and his failure to maintain contact with the probation officer. Three days prior to that report being filed, appellant had turned himself in to Indiana authorities because he had an active Indiana arrest warrant which predated his Minnesota conviction.

2

At his probation-revocation hearing, appellant admitted that he violated his probation by failing to turn himself in by the January 28 report date and failing to maintain contact with his probation officer. Despite these admissions, appellant argued that continued probation would be more appropriate than executing his sentence. Appellant noted that he was grieving the stillbirth of a child shortly before his report date which caused him to go into a "fog" of grief. Once he came out of that "fog," appellant argued, he decided to turn himself in to Indiana authorities. Appellant pointed out that because he was in custody in Indiana, he took advantage of many rehabilitative programs, showing his amenability to probation. Appellant further argued that in-patient treatment for chemical dependency would be appropriate and that the need for confinement did not yet outweigh the policies favoring probation.

Conversely, the state asked the district court to execute appellant's sentence, arguing that appellant made no progress with respect to the conditions of his probation and that he should not be given a second opportunity when he failed to take advantage of the dispositional departure. The state further argued that appellant posed a threat to public safety and that there was no reason to believe that the underlying nature of what led to the violent offense had been addressed. Thus, the state argued, "the policy favoring confinement clearly outweighs those [favoring] probation."

After hearing both arguments, the district court ruled in favor of the state, commenting:

> [C]ertainly I appreciate and understand the efforts that Mr. Jones has made, but I start with the presumption that this was a . . . very serious matter offense and if he is going to get a

3

departure from the commitment to the Commissioner of Corrections because there [are] exceptional circumstances, there is . . . an exceptional responsibility for Mr. Jones to satisfy the expectation. I know I wasn't the sentencing judge, but I know that there was a good deal that you received and that deal was you need to report to the workhouse and satisfy all these conditions in order to avoid what you agreed would be a longer prison sentence.

The first obligation you had was to show up at the workhouse and I know that there may have been some challenges that have gotten you there, but they weren't ones that would excuse you from being there. And I think even though you have made some efforts, it's not efforts that are enough to convince me that I should put the deal aside and put you back on probation even with an extra year in the workhouse or anything like that.

So I'm going to agree with [the state] on this. I'm going to revoke the time, Mr. Jones.

The district court revoked appellant's probation, lifted the stay of execution, and executed his 81-month sentence. This appeal followed.

## D E C I S I O N

When a probationer violates a condition of probation, the district court may continue probation, revoke probation and impose the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). Prior to revoking probation, the district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250. Failure to address all three *Austin* factors requires a reversal and remand, even if the evidence was sufficient to support the revocation. *State v. Modtland*, 695 N.W.2d 602,

4

606-08 (rejecting this court's application of a "sufficient-evidence exception" to the requirement for *Austin* findings). The district court's analysis of the *Austin* factors is reviewed for an abuse of discretion. *Id.* at 605. However, whether the district court has made the required findings presents a question of law, which is reviewed de novo. *Id.*

Appellant first argues that the district court failed to make any of the required *Austin* findings on the record. When conducting an *Austin* analysis, a district court may not simply recite the three *Austin* factors and offer "general, non-specific reasons for revocation." *Id.* at 608. Instead, a district court must "convey their substantive reasons for revocation and the evidence relied upon." *Id.* While written orders are not required, the district court should at least "stat[e] its findings and reasons on the record, which, when reduced to a transcript, is sufficient to permit review." *Id.* at 608, n.4. Here, the record can only be construed as satisfying the first two *Austin* factors. Accordingly, a reversal and remand is warranted.

## I.     First *Austin* factor.

The first *Austin* factor requires that the district court designate the specific conditions of probation that were violated. *Austin*, 295 N.W.2d at 250. Appellant's probation-violation report lists four violations. At the probation-revocation hearing, the district court accepted on the record appellant's admissions as to the first two violations.

5

That finding is sufficient for this court to conclude that the district court designated a specific violated condition as required by *Austin*.[1]

## II. Second *Austin* factor.

The second *Austin* factor requires that the district court find that the violations were "intentional or inexcusable." *Id.* at 250. Although the district court failed to do so explicitly, a review of the record reveals a number of statements that serve as findings that the violations were "intentional or inexcusable."

With respect to appellant's failure to report to the workhouse, the district court stated:

> I understand that there may have been some reasons why there was some confusion, but those don't seem to amount to a justification for failing to appear at the workhouse as you were required to do.

The district court later stated:

> The first obligation you had was to show up at the workhouse and I know that there may have been some challenges that have gotten you there, but *they weren't ones that would excuse you from being there*.

---

[1] Later in the proceeding, the state referred to allegations three and four, but the district court did not comment on whether it was including those allegations as support for the revocation. While the district court failed to specify if it was basing the revocation on some, all, or some combination of the four violations alleged, it expressly accepted the first two violations on the record. We note that, although we reverse and remand based on the third *Austin* factor, if the district court intends to include other alleged offenses as bases for support of revocation, it should specifically designate each offense on the record along with the condition that it violates.

(Emphasis added). With respect to appellant's failure to report to probation, the district court did not accept appellant's explanation that he failed to maintain contact because his probation officer moved:

> APPELLANT: The[y] said that they moved, Sue is my probation officer, from one down here to one that was in Fridley.
> THE COURT: But was that near where your address was at the time?
> APPELLANT: Yes, ma'am.

The district court further stated:

> Remaining in contact, it sounds like some effort but probably . . . not the efforts that were required under your probation.

These statements are not the type of general, non-specific, or reflexive findings prohibited by *Modtland*. 695 N.W.2d at 608. Instead, these statements show that the district court considered the reasons for appellant's violations but nevertheless found them inexcusable. Thus, the district court addressed the second *Austin* factor.[2]

## III. Third *Austin* factor.

The third *Austin* factor requires the district court to "find that [the] need for confinement outweighs the policies favoring probation." 295 N.W.2d at 250. A district court may satisfy the third *Austin* factor if any one of the three sub-factors are present:

---

[2] The state spends much of its brief arguing that the district court did not abuse its discretion in finding that the violation was intentional or inexcusable. But appellant does not contend that the district court abused its discretion on the second *Austin* factor; rather, appellant argues that the second *Austin* factor simply is not present. Moreover, the state's argument essentially asks this court to look to the record for evidence rebutting appellant's excuses. This argument is the exact type of "sufficient evidence exception" argument that was abrogated by *Modtland*. 695 N.W.2d at 606.

(1) confinement is necessary to protect the public from further criminal activity by the offender; (2) the offender is in need of correctional treatment which can be most effectively provided by confinement; or (3) it would unduly depreciate the seriousness of the violation if probation was not revoked. *Id*. at 251. The district court failed to explicitly find that the need for confining appellant outweighed the policies favoring probation.

The state argues that all three sub-factors were implicitly discussed when the district court agreed with the state's overall argument. The state contends that when the district court judge said, "I'm going to agree with [the state] on this," it effectively adopted all of the reasoning and arguments the state had made during the course of the hearing. And because they had discussed some of the sub-factors in making those arguments, the state now argues that this "adoption" was the equivalent of making a finding on the third *Austin* factor. We are not persuaded.

*Modtland* requires that district courts make "thorough, fact-specific records setting forth their reasons for revoking probation." 695 N.W.2d at 608. It would contradict *Modtland* to allow a district court's general agreement with a party's argument to qualify as a finding on the third *Austin* factor simply because the party previously discussed some of the sub-factors. Instead, district courts must "convey their substantive reasons for revocation and the evidence relied upon." *Id*. Doing so allows for effective appellate review, as it is "not the role of appellate courts to scour the record to determine if sufficient evidence exists to support the . . . revocation." *Id*. Following *Modtland*, the

8

district court's lack of findings and substantive reasoning are insufficient to satisfy the

third *Austin* factor.[3]  Thus, a reversal and remand for additional findings is necessary.

**Reversed and remanded.**

---

[3] The state briefly argues that the district court made a finding on the third sub-factor when it addressed appellant, stating: "What I would like to say is you made bad decisions.  We have all made bad decisions.  Yours, you are going to [be] held . . . accountable for those in a very serious way, but what is done is done."  The state contends that this statement shows that the district court believed it would unduly depreciate the seriousness of the violation if probation were not revoked.  But from this statement, it is unclear whether "bad decisions" was referring to appellant's underlying *offense*, or appellant's underlying *violation*, as required by *Austin*.  In any case, it certainly does not qualify as a "thorough, fact-specific" finding sufficient to "convey [the district court's] substantive reasons for revocation and the evidence relied upon." *Modtland*, 695 N.W.2d at 608.