*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0238**

State of Minnesota,
Respondent,

vs.

Christopher Alan Young,
Appellant.

**Filed November 16, 2015
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. 62-CR-13-4001

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

**CHUTICH**, Judge

Appellant Christopher Alan Young challenges the district court's decision to revoke the stay of execution on his 156-month sentence. Because the district court properly found that Young violated the terms of his stay of execution, we affirm.

## FACTS

This case arose from allegations that Young sexually penetrated his younger sister beginning when she was seven years old and continuing until she was approximately ten years old. Young was approximately twelve years old when he began abusing his sister. When the state charged Young, he was nineteen years old.

Young admitted to the allegations and pleaded guilty to first-degree criminal sexual conduct on June 6, 2013. *See* Minn. Stat. § 609.342, subd. 1(g) (2014). The district court sentenced him to 156 months, stayed for 20 years, subject to certain probationary conditions. *See id.*, subd. 3 (2014) (permitting the court to stay execution of the sentence if it finds (1) "a stay is in the best interest of the complainant or the family unit" and (2) "a professional assessment indicates that the offender has been accepted by and can respond to a treatment program").

The conditions of probation required Young to register as a predatory offender, provide a DNA sample, have no contact with the victim, and complete sex-offender treatment. The district court additionally ordered Young to serve 365 days in local confinement. *See id.*, subd. 3 (b)(1) (requiring a term of local confinement as a condition of probation).

On December 6, 2013, Young's probation officer filed a probation violation report, alleging that Young had been terminated from transitional housing for seven major rule violations. His probation officer recommended vacating Young's stay of execution and executing his 156-month sentence.

Because the sentencing court had not enumerated completion of transitional housing as a condition of probation, the district court determined that Young had not violated probation. Instead, the district court modified the terms of his probation to include an additional 365 days in local confinement and completion of transitional housing upon his release.

Young's probation officer filed a second probation violation report on August 27, 2014, alleging three violations. The report claimed that Project Pathfinder had discharged Young from sex-offender treatment, he had absconded from his transitional housing, and his whereabouts were unknown. Young's probation officer again recommended vacating his stay of execution.

At the ensuing probation-violation hearing, Young waived the right to a contested hearing and admitted to the three violations. The parties continued disposition of the violation to explore alternatives to revoking Young's probation.

When the parties returned for disposition of the probation violation, the district court revoked Young's probation. In addition to the original violations, it acknowledged supplemental allegations that Young had three pending misdemeanor offenses from

September 5, 2014, and that Young had unsupervised contact with a minor. The district court concluded:

> I accepted your admissions. I find that without legal excuse or justification you violated conditions of the stay. I find that the violations, even if they weren't intentional, were not excusable. The need for confinement outweighs policies favoring probation because confinement is necessary to protect the public from further criminal activity. It's also because you need correctional treatment which can most effectively be provided while you're in custody. You have been unable to follow through with treatment outside of custody. Finally, the court's consideration is that it would unduly depreciate the seriousness of the violations if probation were not revoked.

The district court executed Young's 156-month sentence, subject to a 10-year conditional release period. Young now appeals the revocation of his stay of execution.

## D E C I S I O N

Young contends that the district court abused its discretion by revoking his stay of execution because its findings about his violations were merely conclusory and did not fulfill the second and third *Austin* factors. *See State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980) (adopting a three-step analysis for future guidance to the district courts in revoking probation). We disagree.

The "purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* The district court has broad discretion to determine if sufficient evidence supports a probation revocation, and this court will only reverse when a clear abuse of discretion occurs. *Id.* at 249–50.

4

When an offender whose sentence was initially stayed violates any of the conditions of probation, the district court may continue the existing stay of execution or execute the offender's sentence. Minn. R. Crim. P. 27.04, subd. 3(2)(b). In *State v. Austin*, the Minnesota Supreme Court established a three-step analysis that district courts must follow before revoking an offender's probation. 295 N.W.2d at 250. Under *Austin*, district courts must (1) specify the probation conditions the offender violated, (2) find the violation was either intentional or inexcusable, and (3) find that the need for confinement outweighs the policies favoring continued probation. *Id.* In creating a record of the three *Austin* findings, "courts must seek to convey their substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005).

Young concedes that his admissions to the probation violations fulfill the first *Austin* factor, but he challenges the district court's findings on the second and third *Austin* factors.

### *Austin* Factor 2

Young contests the district court's finding that his violations were inexcusable, asserting that the district court did not question him about the violations and that no documents were submitted showing why Project Pathfinder discharged him. Young argues that, by making its findings without this information, the district court reacted reflexively to his probation violation, contrary to *Austin's* mandate. *See Austin*, 295 N.W.2d at 251 (stating that a district court's decision to revoke cannot be "a reflexive reaction to an accumulation of technical violations but requires a showing that the

5

offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity") (quotation omitted). This contention lacks merit.

A review of the probation violation hearing transcript supports the district court's finding that Young's violations were inexcusable. Advocating continued probation, Young's attorney conceded that Young had exhausted three previous chances to avoid a lengthy prison sentence. Young's attorney agreed that Young abandoned his transitional housing placement "without justification or excuse." He also stated that when Young learned that the court would issue a warrant for his arrest because of his discharge from Project Pathfinder, Young "by his own admission, just took off." Young's attorney characterized the violations as "just kind of immature, dumb things."

Young's probation officer added that Young had received "numerous opportunities" and that Young was well aware of the potential consequences for failure to cooperate with probation. He told the court that Young was "not listening to probation," "not listening to treatment," and "failed to even seem like he tried."

Finally, in the statement that Young prepared for the hearing, he told the court he was scared after being discharged from sex-offender treatment. Fearing reincarceration, he panicked and ran, despite knowing that he was required to maintain contact with his probation officer.

After hearing this testimony, the district court agreed that Young had squandered opportunities to cooperate with probation and to complete appropriate programming. Addressing Young, the district court observed "somehow, obstacles arise that prevent

6

you from following through" and "you keep having these lapses which I don't think any of us can explain."

Given these statements from Young's attorney, Young's probation officer, Young, and the district court, the district court's findings on the second *Austin* factor are not reflexive. The probation violation hearing transcript contains ample support for its conclusion that Young's violations were inexcusable.

### *Austin* Factor 3

Under the third *Austin* factor a district court may not revoke probation unless it also finds at least one of the following: (1) confining the offender is necessary to protect the public against further criminal acts, (2) the correctional treatment that the offender requires can be most effectively provided in confinement, or (3) the seriousness of the violation would be unduly depreciated if probation were not revoked. *Id.*

The district court has broad discretion to determine whether sufficient evidence exists to support revocation. *Id.* at 249–50. It must only find one of the subfactors to support its finding that the need for confinement outweighs policies favoring continued probation. *Modtland*, 695 N.W.2d at 607. Here, the district court found all three.

Young argues that the district court erred by finding that the need for his confinement outweighed policies favoring continued probation. He contends that the district court ignored that he was genuinely committed to changing his behavior and that it ignored the alternatives to revocation. Young also asserts that the district court relied on improper findings—a mischaracterization of his "history of violations," an underdeveloped record of why Project Pathfinder discharged him, and an overstatement

7

of his lapse in communication with the probation officer—and impermissible, unreported probation violations to reach its conclusion. These contentions are not persuasive.

The district court considered Young's testimony regarding his commitment to change but nonetheless found that all three subfactors existed. Sufficient evidence in the record supports this finding. The district court found that an untreated sex offender presents a danger to the community. It noted that, despite initiating treatment over two years before the violation report, Young repeatedly failed to complete outpatient sex-offender treatment.

Young's assertion that the district court ignored alternatives to revocation misrepresents the availability of any such alternatives. When the parties returned for disposition of the violation, Young's attorney presented only a verbal commitment from Project Pathfinder that it would consider readmitting Young, which Project Pathfinder would not put in writing. At the time of the second hearing, the parties had not established, much less agreed on, viable alternatives.

In sum, excluding the unreported probation violations, sufficient evidence established three clear violations: Young failed to complete sex-offender treatment, he failed to complete transitional housing, and he failed to keep probation informed of his residence. Because the district court made the required *Austin* findings, and the record supports each of these findings, it properly revoked Young's stay of execution.

**Affirmed.**