*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2216**

State of Minnesota,
Respondent,

vs.

Ryan Allen Bartyzal,
Appellant.

**Filed November 30, 2015
Affirmed
Schellhas, Judge**

Scott County District Court
File Nos. 70-CR-07-12369, 70-CR-14-3484

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Carson J. Heefner, Heefner Nelson Law, P.A., St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant argues that the evidence was insufficient to support the district court's revocation of his probation. We affirm.

**FACTS**

The facts are undisputed. In May 2008, appellant Ryan Bartyzal pleaded guilty to third-degree criminal sexual conduct and fourth-degree criminal sexual conduct. Bartyzal committed third-degree criminal sexual conduct against S.E.K. when he was 19 years old and she was 15 years old. He committed fourth-degree criminal sexual conduct against E.M.K. when he was 20 years old and she was 15 years old. In sentencing Bartyzal, the district court departed downward dispositionally by staying imposition of sentence on the third-degree conviction and placing Bartyzal on probation for five years. On the fourth-degree conviction, the court imposed a sentence of 66 months' imprisonment, which it stayed for five years with concurrent probation.

On March 11, 2010, Scott County Community Corrections (SCCC) filed a probation violation report against Bartyzal, alleging that he failed to refrain from the use of alcohol or non-prescribed drugs based on Bartyzal's admission that he had consumed alcohol on three different occasions. At his probation violation hearing, Bartyzal admitted to the alleged violation, and the district court reinstated Bartyzal's probation with three days in jail as an intermediate sanction.

On March 21, 2013, SCCC filed a second probation violation report against Bartyzal. The report alleged that Bartyzal had failed to remain law-abiding because he

2

was charged with felony domestic assault in July 2012, failed to successfully complete outpatient sex-offender treatment because he was terminated from the treatment program at CORE Professional Services P.A. in March 2013, and possessed sexually explicit materials. At his probation violation hearing, Bartyzal admitted to failing to complete sex-offender treatment and possessing sexually explicit materials. The district court reinstated and extended Bartyzal's probation for three years or until completion of sex-offender treatment and imposed an intermediate sanction of 180 days in jail.

On August 21, 2014, SCCC filed a third probation violation report against Bartyzal, alleging that he had failed to successfully complete sex-offender treatment because he again was terminated from the program at CORE in August 2014, failed to submit to urinalysis testing, and failed to submit to polygraph examination. Bartyzal admitted to these violations at his probation violation hearing. At a disposition hearing on September 29, the district court accepted Bartyzal's admissions, found that his probation violations were intentional and inexcusable, and stated:

> [W]e said [at the 2013 probation violation hearing] you've got to stop screwing around. Here we are.
> You know, there's some language in the statute about diminishing the seriousness of—you know, that we continue people on probation after violation and violation and violation, and after a while it just looks like we don't have any reason to have violations because it doesn't matter because we just keep continuing down the same road. At some point, I start to look foolish and Probation starts to look foolish because they keep asking you to do the same things, and you don't do them; and whether or not it's nervousness or you being aloof, the impression they are getting is you are laughing and you are yawning and you are not doing what you need to do in these programs.

3

> In the end, we have to say, well, we can't seem to get Mr. Bartyzal's attention that this is serious, and I guess that's our real concern is that this has gone on and on and on. Your lawyer is right, it's been a long time, but it's been a long time. You should be through this stuff by now.

The court revoked Bartyzal's probation, revoked the stays of imposition and execution, and executed concurrent sentences of 28 months' imprisonment and five years' conditional release for the third-degree criminal sexual conduct conviction and 66 months' imprisonment and lifetime conditional release for the fourth-degree criminal sexual conduct conviction.

This appeal follows.

## DECISION

Before revoking probation, a district court must: (1) "designate the specific condition or conditions that were violated," (2) "find that the violation was intentional or inexcusable," and (3) "find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Bartyzal challenges the sufficiency of the evidence with respect to the third *Austin* factor.[1]

The district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249–50. "When determining if revocation is appropriate, courts must balance 'the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety,' and base their decisions 'on sound judgment and not

---

[1] Because Bartyzal "concedes that failure to make express [*Austin*] findings is not an abuse of discretion where the record contains sufficient evidence supporting revocation," we do not address whether the district court made a proper third *Austin* finding.

just their will.'" *State v. Modtland*, 695 N.W.2d 602, 606–07 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 250–51). To satisfy the third *Austin* factor, courts should consider whether (1) "confinement is necessary to protect the public from further criminal activity by the offender," (2) "the offender is in need of correctional treatment which can most effectively be provided if he is confined," or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Austin*, 295 N.W.2d at 251 (quotation omitted); *accord Modtland*, 695 N.W.2d at 607.

Bartyzal focuses on whether his confinement is necessary to protect the public from further criminal activity, arguing that "except [for] an innocuous mistake," he was a "model probationer," despite the fact that he still had not completed sex-offender treatment "roughly five years after being placed on probation." He contends that, while it was "taking him a little longer than usual to complete" the treatment program, he was "unjustly terminated" from the program for not completing one polygraph examination and being unprepared for two group sessions. He asserts that he was only terminated from the program after a new individual was placed in charge, who was "simply unfamiliar with [Bartyzal]'s progress over the course of 6 years, and witnessed a few rules violations in a short period of time," and that "[he] was terminated from a program in which he was making progress."

In addressing the third *Austin* factor, the district court stressed Bartyzal's repeated failure to do the things that he had been ordered to do throughout his probationary period and expressed a belief that "it would unduly depreciate the seriousness of the violation if probation were not revoked." *See Austin*, 295 N.W.2d at 251 (quotation omitted); *see*

*also State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015) (stating that consideration of downward dispositional departure when deciding whether to revoke probation is proper); Minn. Sent. Guidelines 3.B (2014) (stating that, when considering whether to revoke a stayed sentence, "[l]ess judicial tolerance is urged for offenders who were convicted of a more severe offense").

Based on our careful review of the record, we conclude that the evidence amply supports the district court's findings and that the court did not abuse its discretion by revoking Bartyzal's probation.

**Affirmed.**