*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0560**

State of Minnesota,
Respondent,

vs.

Vaundell DuWayne Kingbird,
Appellant.

**Filed November 21, 2016
Affirmed
Connolly, Judge**

Itasca County District Court
File No. 31-CR-14-640

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Muhar, Itasca County Attorney, Todd S. Webb, Assistant County Attorney, Grand Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

In this probation-revocation appeal, appellant argues that the district court abused its discretion when it found that the need for confinement outweighed policies favoring probation. Because the district court thoroughly evaluated appellant's circumstances and actions and because its findings were supported by the record, we affirm.

## FACTS

Appellant Vaundell DuWayne Kingbird pleaded guilty to one count of felony domestic assault, two counts of felony violation of a domestic abuse no contact order, and one count of felony attempted violation of a domestic abuse no contact order (DANCO). The charge for felony domestic assault arose from an argument in which appellant struck his children's mother (the victim) with a closed fist, a felony by virtue of prior enhanceable domestic-assault offenses. The first count of DANCO violation arose when appellant arranged to send a text to the victim despite knowing such contact was prohibited by a DANCO resulting from the earlier assault. The second count of DANCO violation arose two days later when appellant called the victim from jail and left a voicemail on her answering machine, again despite knowing such contact was prohibited. The count of attempted DANCO violation arose later that same day when appellant again called his fiancé from jail, but did not leave a voicemail. All DANCO-related charges were felonies by virtue of appellant's prior enhanceable domestic-assault offenses.

2

Appellant was sentenced on the same day as his plea and in accordance with the plea agreement. All four convictions carried a presumptive commitment to prison.[1] For the domestic-assault conviction, he was sentenced to 15 months in prison but the district court stayed execution of that sentence and placed him on probation for five years in a downward dispositional departure. For each of the three DANCO-related convictions, he was sentenced to 12 months and one day in prison. Each sentence was stayed and appellant was placed on probation. All sentences were consecutive to one another for a total of 51 months and were consecutive to appellant's then-current supervised release.

Appellant went to prison for a supervised-release violation on another charge because of the above convictions and was again released in March 2015. During his probation for the above convictions, in June 2015, appellant submitted a urine sample which tested positive for methamphetamine. This violation was addressed by way of a sanctions conference rather than a formal probation-violation report and hearing. Appellant was ordered to comply with the recommendations of a recent chemical-dependency assessment and to complete 80 hours of community service within six months.

In July 2015, appellant's probation officer filed a probation-violation report alleging that appellant had violated the terms of his probation by failing to remain law abiding. In October 2015, he was convicted of gross-misdemeanor domestic assault, the offense

---

[1] The convictions carry presumptive consecutive executed sentences because appellant was on supervised release on the date of offense. *See* Minn. Sent. Guidelines 2.F.1.a(1)(iii) (2014).

underlying the violation, and sentenced to 365 days in jail.[2] He was brought from jail to district court to address this violation in November 2015. He admitted to the violation and waived his right to have the state prove the violation. The district court accepted appellant's admission, found a factual basis supporting it, and found that appellant intentionally and inexcusably violated the terms and conditions of probation by failing to remain law abiding. The matter was scheduled for a disposition hearing in January 2016.

At the disposition hearing, respondent State of Minnesota offered the probation-violation report and addendum but presented no witnesses. Appellant testified, offered testimony from two family members, and cross-examined his probation officer. Appellant also offered exhibits in the form of a letter from a jail pastor who counseled appellant, a police report describing the recantation by the victim of appellant's new conviction for domestic assault, a sworn statement from the same victim indicating she made up the incident, a police report indicating appellant turned himself in related to that offense, a psychological evaluation by a licensed psychologist, correspondence between appellant's attorney and a dispositional advisor regarding a continuance, and correspondence between appellant's attorney and a Rule 25 assessor with recommendations. The district court considered these documents before taking testimony. Appellant also remarked that he had to register as a sex offender because he pleaded guilty to an offense arising out of a charge of criminal sexual conduct. The district court asked appellant's probation officer for a

---

[2] Appellant was originally charged in July 2015 with felony domestic abuse and felony third-degree criminal sexual conduct. The victim later recanted, and appellant pleaded guilty to gross-misdemeanor domestic assault.

recommendation.  Appellant's attorney argued against revocation, and appellant asked for another chance at treatment before the district court made a decision.

The district court found that the need for confinement outweighed the policies in favor of probation because appellant was "not amenable to probation" and presented "a significant public safety risk."  After stating the reasons in support of this finding, the district court revoked appellant's probation and executed appellant's three sentences, to be served consecutively, for a total of 51 months. This appeal follows.

## D E C I S I O N

Before revoking probation, a district court must conduct a three-step analysis: "the court must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980).  Appellant agrees that the district court satisfied the first two requirements of *Austin*.

Appellant argues that the district court abused its discretion by revoking his probation because he "had only received one sanction, served a significant amount of jail time, arranged for inpatient chemical dependency treatment, established mental health services in the community, and had a good relationship with his probation officer."  In balancing public safety and rehabilitation, a district court should not revoke an offender's probation and imprison that offender

> unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
> (i)   confinement is necessary to protect the public from further criminal activity by the offender; or

5

> (ii)   the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii)  it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quotation omitted).  Because there is no ambiguity in the use of the word "or" in the above standard, this court reads it "in the disjunctive and require[s] that only one of the possible factual situations be present" to satisfy the standard.  *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000).  As a result, appellant's argument that the district court abused its discretion in finding that the need for confinement outweighed policies favoring probation will fail if one of the above reasons is supported by the record.

The process of finding an intentional and inexcusable violation and proceeding to balance the need for confinement against policies favoring probation "prevents courts from reflexively revoking probation when it is established that a defendant has violated a condition of probation."  *Modtland*, 695 N.W.2d at 608.  "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion."  *Austin*, 295 N.W.2d at 249-50.

The district court made detailed findings to support its decision to revoke appellant's probation.  It focused on the need to ensure public safety:

> He has a history of violating probation and having . . . stays revoked.  He has even a record of violating supervised release.  He has, of course, an extensive prior record, both in terms of just the number, which include, obviously, some fairly minor things, . . . but also the severity of his criminal history.  I do not agree . . . that the fact that these matters are gross misdemeanors and/or felonies because they're enhanced is mitigating.  To me, that's aggravating, that a person has a prior

6

record for the same kind of thing and keeps committing the same kind of thing. That's not a mitigating factor. . . .

He has had services offered as indicated by [probation]. They've never . . . really gotten off the ground, but that's because he's gone ahead and then committed new offenses. And I realize there's always sort of the issue . . . the chicken and the egg. You know, well, if he was given a little more time and could get the help he needs, maybe he wouldn't reoffend, but meanwhile he is, in fact, reoffending. And he's . . . not just violated probation while he's been on probation, he's committed new offenses and new violent offenses. In this case, he . . . testified that almost immediately [after the sanctions conference], just a couple days, he went back to using meth again.

Appellant's probation officer testified, "I didn't mind working with [appellant]. He was always polite to me, he did show up, and I do believe he gave me what his best effort was. Unfortunately, that doesn't negate the fact that I believe he's a risk to the community. His actions have shown that." A probation-violation report submitted shortly before the disposition hearing indicated that appellant's "history on community supervision has been poor, as he has yet to demonstrate any significant period of compliance or law abiding behavior." It then described in detail the pattern of release, reoffense, and reincarceration that had repeated since appellant's first offense in 2006.

In considering this pattern, the district court also considered appellant's persistent mental illness, his chemical dependency concerns, and his history of victimization. The district court noted that "you have to have sympathy and empathy for [a dangerous] person for what made them this way in the first place." Nonetheless, it remarked that "the possible consequence of incarceration, including

7

prison, should be part of who this person is as well, too, when they make their decisions." The district court noted that "this is also not just about [appellant] and his needs, it's about public safety."

The district court did not make a reflexive decision in revoking appellant's probation, but rather carefully weighed appellant's needs against public safety concerns. Given appellant's undisputed past pattern of failure on probation and supervised release and his continued criminal conduct, the district court did not abuse its discretion when it determined there was sufficient evidence to revoke probation and that the need for confinement outweighed policies favoring probation.

**Affirmed.**