*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0927**

State of Minnesota,
Respondent,

vs.

Keenen Rashad Agee,
Appellant.

**Filed January 11, 2016
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19HA-CR-13-3056

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Jessica A. Bierwerth, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Keenen Rashad Agee challenges the district court's revocation of his probation, arguing that the evidence does not establish that the need for confinement outweighs the policies favoring probation. We affirm.

## FACTS

On September 19, 2013, appellant was charged with first-degree burglary involving use of a dangerous weapon. On December 9, 2013, he entered an *Alford* plea of guilty to the charge. The district court imposed a 57-month prison sentence (the "top of the box" and higher than the presumptive sentence of 48 months). But the district court departed downward dispositionally, staying the sentence and placing appellant on supervised probation for 20 years. The conditions of appellant's probation included: (1) serve 365 days in the Dakota County Jail; (2) pay a fine of $200; (3) pay restitution; (4) remain law abiding; (5) follow the recommendations in his psychological evaluation; (6) do not use or possess alcohol or controlled substances; (7) commit no same or similar offenses; and (8) submit a DNA sample. Appellant was not specifically instructed to establish or to maintain contact with probation, ordered to obey the standard terms and conditions of probation, or required to sign a written probation agreement. The district court based its dispositional departure on its finding that appellant was amenable to probation because he had "completed many programs through the [Dakota County] jail to help him become a better person and more productive member of society . . . [and] has no prior criminal history." At sentencing, the district court judge told appellant, "This is

2

your chance. Your first probation violation is not going to be your first chance. This is your one and only chance so you need to walk the line. Because if you don't you're going to be going to prison."

Appellant's probation was transferred to Hennepin County on June 5, 2014.[1] On September 12, 2014, a Dakota County probation supervisor filed a probation-violation report based on appellant's alleged failure to remain law abiding. He had been charged with four misdemeanor offenses. At the October 23, 2014 probation-violation hearing, the district court continued the hearing after appointing counsel to represent him and specifically stated that appellant must comply with the terms of his probation and that he needed to remain in contact "with people." At the January 6, 2015 continued probation-violation hearing, appellant denied the claimed probation violation for failing to remain law abiding. He indicated that he was going to treatment for marijuana use and requested a continuance, which the district court granted.

On March 3, 2015, appellant requested an additional continuance pending the resolution of his other criminal charges. The state opposed this request and asked to proceed on the basis of a March 2, 2015 addendum to the probation-violation report alleging that appellant violated probation by testing positive for marijuana on seven occasions, failing to undergo chemical testing as directed by his probation officer, failing to attend weekly appointments with his probation officer, and failing to complete chemical-dependency treatment. Appellant's counsel requested a short continuance,

---

[1] Kathy Wieskus, a Dakota County probation officer, testified that a probation transfer is required if the defendant is considered high risk and is living in another county.

3

stating that he had only received the addendum approximately one hour before the hearing. The hearing was continued until March 5, 2015, and at the continued probation-violation hearing, appellant agreed that he had violated his probation by using marijuana and testing positive for the substance on seven occasions between September 26, 2014 and February 12, 2015. Appellant also agreed that he missed 13 chemical-testing appointments.

The only testimony at the hearing came from appellant and Wieskus. Wieskus was not appellant's probation officer, and she had no personal interactions with appellant. She based her testimony on e-mails and correspondence with appellant's Hennepin County probation officer, which were not included in the record. Appellant did not object to Wieskus's testimony, and he does not argue on appeal that the district court plainly erred in receiving it.

Wieskus testified that, in January 2015, appellant's probation officer required him to complete a chemical-health assessment and enroll in outpatient treatment. Appellant attended treatment for one day. He was discharged for failing to attend after that because he was in custody. Wieskus also testified that appellant signed a probation agreement stating that he would attend probation meetings as scheduled. She stated that he was required to meet weekly with his probation officer after December 13, 2014. Wieskus testified that appellant missed appointments on September 8, October 9, October 13, December 10, December 17, December 24, December 31, 2014, and January 7 and February 23, 2015. Wieskus testified that appellant called a day after the December 10, 2014 missed appointment, asked if he had any warrants, apologized, and promised to be

4

in the following week. Appellant called one day after he missed three separate appointments. Wieskus recommended revocation of appellant's probation.

Appellant explained that he contacted his treatment counselor after his release from custody, but had not heard back from his counselor. Appellant admitted not having contacted his counselor while in custody. He acknowledged his need for treatment and stated that his chemical use was due to stress from being unable to obtain employment. Appellant testified that he called his probation officer the same day he missed the appointments, testimony that the district court did not find credible. Appellant stated that transportation issues caused his missed appointments.

The state argued for execution of appellant's sentence because he had proved himself not amenable to probation. Appellant noted that other individuals received multiple chances and asked for "one more [chance]" to succeed.

The district court revoked appellant's probation and executed his sentence, finding that the state had proven by clear and convincing evidence that he had violated probation by using marijuana, having 7 positive chemical tests, missing approximately 13 chemical tests, and missing at least 6 appointments with probation. The district court found that the violations were intentional and inexcusable, and that the need for confinement of appellant outweighed the policies favoring restating him to probation. This appeal followed.

## D E C I S I O N

Appellant argues that the district court abused its discretion by revoking his probation because the record does not establish that the need for confinement outweighs

5

the policies favoring continued probation. When a probationer violates a condition of probation, a district court may continue probation, revoke probation and impose the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). Before revoking probation, the district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Failure to address all three *Austin* factors requires reversal and remand, even if the evidence was sufficient to support the revocation. *State v. Modtland*, 695 N.W.2d 602, 606-08 (Minn. 2005) (rejecting this court's application of a "sufficient evidence exception" to the *Austin* findings requirement).

"A district court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 605 (quotation omitted). When a district court's *Austin* findings present a question of law, de novo review is required. *Id.*

Here, at the contested probation-violation hearing, appellant admitted and the district court found that appellant violated the conditions of his probation. The district court found that the violations were not excusable, and that the need for confinement outweighed the policies favoring probation.

I.    **First *Austin* Factor**

Appellant does not argue that the district court erred by revoking his probation for violating conditions that were never actually imposed. However, we "may review any

6

order or ruling of the district court or any other matter, as the interests of justice may require." Minn. R. Crim. P. 28.02, subd. 11; *see also State v. Ornelas*, 675 N.W.2d 74, 79 (Minn. 2004) (addressing the first *Austin* factor after appellant raised the issue for the first time upon its appeal to that court).

Violation of a condition of probation not actually imposed by the district court cannot serve as a basis for revoking probation. *Id.* at 79-80 (holding that a condition imposed by a probation officer that the probationer have no contact with certain individuals, absent an order from the district court, may not support revocation); Minn. R. Crim. P. 27.03, subd. 4(E)(3) (providing that "[i]f lawful conduct could violate the defendant's terms of probation, the [district] court *must* tell the defendant what that conduct is" (emphasis added)). Even a probationer's actual belief that he has violated probationary conditions is irrelevant if that condition was not actually imposed. *Ornelas*, 675 N.W.2d at 80 ("[T]hat a probationer . . . believes something to be a condition of probation does not necessarily make it so."); *State v. B.Y.*, 659 N.W.2d 763, 769 (Minn. 2003) (holding that a curfew requirement imposed by a juvenile's probation officer that was not part of the district court's order could not support a probation revocation, even though the juvenile believed he had violated a court-imposed condition).

### A.     *Failure to Attend Required Appointments with Probation*

The district court's first identified basis for revoking appellant's probation was his failure to attend required appointments with probation. Although the district court placed appellant on supervised probation, it did not specify a condition of probation requiring him to maintain contact with the probation department. However, Wieskus testified that

appellant signed a probation agreement requiring him to attend probation meetings and appointments as scheduled. While no probation agreement is in the record, appellant did not dispute signing such an agreement. The district court also placed appellant on "supervised probation," which implicitly requires him to meet with probation officers. And, at the October 23, 2014 probation-violation hearing, the district court specifically instructed appellant that he needed to remain in contact "with people" after he missed multiple meetings with his probation agent. Based on these facts, we conclude that appellant was properly notified of his obligation to meet with probation as directed, and that the district court did not abuse its discretion by revoking appellant's probation on this basis.

### B.    *Failure to Submit to Chemical Testing*

The second identified basis for the district court's probation-revocation order involved appellant failing and missing chemical tests. Wieskus testified that testing was required because appellant "was high when he committed the crime." This claim is unsupported by the record. Appellant's pre-sentence investigation report and psychological evaluation both state that chemical use was *not* a factor in the underlying offense. And testing was not made a condition of appellant's probation. The district court erred by considering appellant's failure to submit to chemical testing as a basis to revoke his probation because no such probation condition was imposed.

### C.    *Use of Marijuana*

The district court specifically required appellant to abstain from the use of alcohol and controlled substances as a condition of probation. Appellant admitted using

8

marijuana while on probation to cope with stress. Appellant's marijuana use was a valid basis for revoking his probation.

Because appellant violated his probation by failing to meet with probation and by using marijuana, the district court did not abuse its discretion in determining that the first *Austin* factor had been met.

## II.    Second *Austin* Factor

The second *Austin* factor requires that the district court find that the violations were "intentional or inexcusable." *Austin*, 295 N.W.2d at 250. Appellant does not challenge the district court's determination that the probation violations were "intentional and inexcusable." Because the record supports this finding, the second *Austin* factor is satisfied.

## III.    Third *Austin* Factor

"The purpose of probation is rehabilitation and revocation should be used only as a last resort when treatment has failed." *Id.* Before revoking probation and executing a prison sentence, a district court must find that the need for confinement outweighs the policies favoring probation. *Id.* When assessing whether revocation is proper under the third *Austin* factor, the district court must consider whether (1) "confinement is necessary to protect the public from further criminal activity by the offender," (2) "correctional treatment . . . can most effectively be provided if [the offender] is confined," or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607. The district court need only find the existence of one of these subfactors. *Austin*, 295 N.W.2d at 251. Here, the district court found that two

9

subfactors support revocation of appellant's probation:  that confinement is necessary to protect the public from further criminal activity by appellant, and that failing to execute appellant's sentence "would unduly depreciate the seriousness of the violation." *Modtland*, 695 N.W.2d at 607.

Appellant argues that the district court's findings on this factor are not supported by the record.  We disagree.  The district court found that confinement was necessary "based upon the underlying offense and [appellant's] lack of success on probation."  A district court may consider an initial downward dispositional departure as relevant to a later revocation decision.  *State v. Fleming*, 869 N.W.2d 319, 331 (Minn. App. 2015). "Less judicial forbearance is urged for persons violating conditions of a stayed sentence who were convicted of a more severe offense or who had a longer criminal history." *State v. Osborne*, 732 N.W.2d 249, 254 (Minn. 2007) (quoting Minn. Sent. Guidelines III.B (2006)).  Appellant's conviction for burglary with a dangerous weapon is a serious offense implicating public-safety concerns.  Minn. Stat. §§ 609.582, subd. 1(b) (2012); 609.11, subd. 4 (2012).  Additionally, the district court noted appellant's failure to attend probation appointments after the initial report of violations.  Its expressed concern about appellant's risk to public safety if left unsupervised in the community by not maintaining regular contact with probation is supported by the record.  A district court may properly revoke probation upon proof of only one of the part-three subfactors.  *Austin*, 295 N.W.2d at 251.  These findings and the record that supports them are sufficient to demonstrate that the district court did not abuse its discretion in finding that the third *Austin* factor has been satisfied to support revocation of appellant's probation.

Appellant argues that the district court "had other options to impose as a consequence for the probation violations" short of executing appellant's sentence. And it is axiomatic that a district court may not reflexively revoke probation for any violation of conditions. *See State v. Finch*, 865 N.W.2d 696, 705 (Minn. 2015) (holding that a district court judge was disqualified from presiding over that appellant's probation-revocation hearing because of the judge's unequivocal statement that it would "revoke his probation for any violation" and its speculation that the appellant had "'duped' the court when he exercised his right to appeal"). But the district court has discretion to revoke probation if its findings on the *Austin* factors are supported by the record. *Modtland*, 695 N.W.2d at 608. On careful review of the record, we are persuaded that the district court here acted within its discretion in revoking appellant's probation after making the required *Austin* findings.

**Affirmed.**